Filed 4/26/16 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ROBERT ALAN JONES,<br><br>    Defendant and Appellant. | C074824<br><br>(Super. Ct. No. MCYKCRBF111939)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on March 30, 2016, be modified as follows:

On page 11, delete the second full paragraph that begins, "In her reply brief . . . ."

This modification does not change the judgment.

The petition for rehearing is denied.

1

THE COURT:

          BLEASE          , Acting P. J.

          NICHOLSON          , J.

          MURRAY          , J.

Filed 3/30/16

CERTIFIED FOR PARTIAL PUBLICATION[*]


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE, | C074824 |
| Plaintiff and Appellant, | (Super. Ct. No. MCYKCRBF111939) |
| v. | |
| ROBERT ALAN JONES, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Siskiyou County, Donald R. Langford, Judge. Affirmed.

Harry Zimmerman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, George M. Hendrickson, and Catherine Chatman, Deputy Attorneys General, for Plaintiff and Appellant.

---

[*] Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part I.

1

Both defendant Robert Alan Jones and the Attorney General appeal after a jury convicted defendant of residential burglary, receiving stolen property, and resisting a peace officer and the trial court sentenced him to an aggregate term of 25 years under the Three Strikes law. Defendant contends that trial counsel's representation violated his right to counsel because the attorney had a conflict of interest, and the Attorney General contends that remand is required because the trial court failed to provide written reasons in the court's minutes for dismissing a strike. We conclude that (1), even assuming a conflict of interest violated defendant's right to counsel, there was no resulting prejudice and (2) current law does not require the trial court to provide written reasons in the minutes for dismissing the strike.

BACKGROUND

On the morning of December 4, 2011, Joan and Gary Marlow discovered that someone had entered their home in Yreka during the night and taken items, including Christmas presents, mobile phones, a carton of Virginia Slims cigarettes, a camera, a television, and Joan Marlow's purse. In the course of the investigation, Sergeant Raymond Boutin of the Yreka Police Department searched defendant and found him in possession of Virginia Slims cigarettes, even though defendant had denied he had cigarettes when Sergeant Boutin asked. A later search of the room where defendant lived in Yreka revealed many of the items taken from the Marlow residence, including mobile phones, cigarettes, the television, the items from the Christmas presents, and the packaging from the Christmas presents.

Police found defendant at a house in Yreka, and he refused to come out. A police dog was sent in, and eventually defendant was arrested.

The defense presented evidence that defendant was living elsewhere, not in Yreka, at the time of the burglary, and that he was not present during the burglary.

A jury convicted defendant of residential burglary (Pen. Code, § 459), receiving stolen property (Pen. Code, § 496, subd. (a)), and resisting a peace officer (Pen. Code,

2

§ 148, subd. (a)(1)).  The trial court found true the additional allegations that defendant had seven prior felony convictions (Pen. Code, § 667.5, subd. (b)) and two prior serious felony convictions (residential burglaries; Pen. Code, § 459) in 1994 and 1996.

At sentencing, the court dismissed one of the prior serious felony convictions under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.  Defendant was sentenced to 12 years (upper term doubled) for residential burglary (Pen. Code, § 459), adding an additional 13 years for prior convictions and prison terms (Pen. Code, §§ 667, subd. (a)(1); 667.5, subd. (b)) for an aggregate term of 25 years in state prison.

DISCUSSION

I

*Conflict of Interest*

Defendant contends that we must reverse because his right to counsel was violated when his attorney had a conflict of interest resulting from his prior representation of a potential witness.  We conclude that, even assuming a conflict of interest and a violation of the right to counsel, there was no prejudice here.  Accordingly, the contention is without merit.

A.    *Procedural Background*

With a trial date imminent, counsel for defendant asked to speak with the trial court in camera.  Neither the prosecutor nor defendant was present.  In the hearing, defense counsel requested a continuance.  He explained that he had failed to subpoena an incarcerated witness who would be "exculpatory" as to the residential burglary count.  Later in the hearing, he said that the witness's name was Ronald Willis and that his testimony was "potentially exculpatory."  Defense counsel gave no further details of the anticipated testimony.

In open court, with the prosecutor present, the trial court said that a request for a continuance to subpoena Ronald Willis as a witness was pending.  The prosecutor summarized her understanding of a statement the defense had provided about Willis's

3

potential testimony.  Because this is the only statement in the record providing further specificity concerning Willis's potential testimony, we quote the prosecutor:

"[A]ccording to . . . the statement [concerning Willis's potential testimony], Mr. Willis had some information about someone selling things at the Yreka Motel that matched the items that were stolen from the victim[s'] home.

"[T]he People don't think it's very significant and reliable evidence, but more importantly, Ronald Willis is the son of Scott Brazzi, according to the defense statement, and Scott Brazzi was with Mr. Willis and, apparently, saw the same thing.

"So, it seems to be tenuous, at best, as far as importance in the case.  I haven't heard anything regarding how important his information is.  I understand it might be difficult to get him out of prison at this late date, but the importance of – we question the importance of his testimony, especially when his father apparently is available and can testify to same."

The court granted the defense request for a continuance.

In a later hearing, defense counsel informed the trial court that there was a "potential conflict" because counsel represented Willis in a prior matter.  Defense counsel reported that defendant was willing to waive the conflict, and, if Willis was unwilling to waive the conflict, defendant "would agree to not call Mr. Willis as a witness."

During the week before trial, the prosecution filed a motion in limine to impeach Willis with four prior felony convictions, including two residential burglaries.

The court asked defense counsel about the potential conflict, and counsel responded:

"Your Honor, this has come up before in the past, and I felt that we should still address it.  Well, we should address it to the extent of making sure [defendant] knows and understands it at the time where we're now on the eve of trial, and that is it has to do with Ronald Willis as a potential witness.

4

"And Mr. Willis was brought here at my request, and he's a state prison prisoner serving a commitment. . . . I was able to interview Mr. Willis on Saturday. And without going into the details of the discussion, Mr. Willis'[s] position is that he's not willing to waive any conflict that may exist due to my prior representation of him such that he would be a witness in this case.

"My understanding from before, and I believe we put this on the record some time ago, is that [defendant] would agree that if Mr. Willis would not waive any conflict, in other words, such that he could be a witness and I could cross-examine him or examine him, that [defendant] would agree that we would not have to call Mr. Willis."

In response to the trial court's inquiry, defendant indicated that he was "willing to not have Mr. Willis testify as a defense witness in this case."

B.      *Analysis*

"A criminal defendant is guaranteed the right to the assistance of counsel by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution. This constitutional right includes the correlative right to representation free from any conflict of interest that undermines counsel's loyalty to his or her client. [Citations.] 'It has long been held that under both Constitutions, a defendant is deprived of his or her constitutional right to the assistance of counsel in certain circumstances when, despite the physical presence of a defense attorney at trial, that attorney labored under a conflict of interest that compromised his or her loyalty to the defendant.' [Citation.] 'As a general proposition, such conflicts "embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or his own interests." ' [Citation.]" (*People v. Doolin* (2009) 45 Cal.4th 390, 417 (*Doolin*); *People v. Cox* (1991) 53 Cal.3d 618, 653, disapproved on other points in *Doolin, supra,* at p. 421, fn. 22.)

"In *Mickens v. Taylor* (2002) 535 U.S. 162 [152 L.Ed.2d 291] (*Mickens*), the high court confirmed that claims of Sixth Amendment violation based on conflicts of interest

5

are a category of ineffective assistance of counsel claims that, under *Strickland*[ *v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 698]], generally require a defendant to show (1) counsel's deficient performance, and (2) a reasonable probability that, absent counsel's deficiencies, the result of the proceeding would have been different. [Citations.] In the context of a conflict of interest claim, deficient performance is demonstrated by a showing that defense counsel labored under an actual conflict of interest 'that affected counsel's performance– as opposed to a mere theoretical division of loyalties.' [Citations.] '[I]nquiry into actual conflict [does not require] something separate and apart from adverse effect.' [Citation.] 'An "actual conflict," for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance.' [Citation.]" (*Doolin, supra,* 45 Cal.4th at pp. 417-418, italics omitted.)

"[A] determination of whether counsel's performance was 'adversely affected' under the federal standard 'requires an inquiry into whether counsel "pulled his punches," i.e., whether counsel failed to represent defendant as vigorously as he might have, had there been no conflict. [Citation.] In undertaking such an inquiry, we are . . . bound by the record." (*Doolin, supra,* 45 Cal.4th at p. 418.) *Doolin* "adopt[ed] the federal constitutional standard for evaluating claims of conflict of interest under our state Constitution." (*Id*. at p. 419.) Other than multiple concurrent representation where a presumption of prejudice may apply to conflicts of interest, defendant must demonstrate outcome-determinative prejudice. (*Id.* at pp. 418, 420-422.)

"[T]he Sixth Amendment does not require any particular response by counsel to a problem that may arise. Rather, the Sixth Amendment inquiry is into whether the attorney's conduct was 'reasonably effective.' To counteract the natural tendency to fault an unsuccessful defense, a court reviewing a claim of ineffective assistance must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' [Citation.] In giving shape to the perimeters of this range of reasonable professional assistance, *Strickland* mandates that '[prevailing] norms of

6

practice as reflected in American Bar Association Standards and the like, . . . are guides to determining what is reasonable, but they are only guides.' [Citation.] [¶] Under the *Strickland* standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel." (*Nix v. Whiteside* (1986) 475 U.S. 157, 165 [89 L.Ed.2d 123, 133-134].)

"In resolving claims of ineffective assistance, we must 'assess counsel's overall performance throughout the case' [citation], evaluating it 'from counsel's perspective at the time of the alleged error and in light of all the circumstances. [Citation.]' [Citation.]" (*People v. Cox, supra,* 53 Cal.3d at p. 661.)

Here, we need not evaluate defense counsel's performance because, on this record, there is no support for the argument that there is a reasonable probability that, absent counsel's asserted deficiencies, the result of the proceeding would have been different. (*Doolin, supra,* 45 Cal.4th at pp. 417-418.) However, before turning to the matter of prejudice, we must consider defendant's argument that he is entitled to a presumption of prejudice. We conclude he is not entitled to such a presumption because this is not a case of concurrent representation.

Defendant claims that there was "a conflict of interest based on [counsel's] prior representation of Willis and his current representation of [defendant]." He asserts that, because counsel owed a duty of loyalty to Willis, he is entitled to a presumption of prejudice. But that is not true here. This was a case of serial, not concurrent, representation. Defense counsel no longer represented Willis, even if he still owed him a duty of loyalty imposed by the prior representation, which duty does not expire at the end of active representation. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 [duty of loyalty continues after representation ends].) Since defense counsel was not actively representing Willis at the same time he was representing defendant, there is no presumption of prejudice.

While we note that defendant argues only for automatic reversal as a result of a presumption of prejudice, we also conclude that the record does not support a finding of prejudice. The record reveals little about Willis's potential testimony. The prosecutor referred to a statement that Willis "had some information about someone selling things at the Yreka Motel that matched the items that were stolen from the victim[s'] home." But Willis's father had the same information. There is no indication in the record of how that information would have exonerated defendant or that the jury would have believed a very impeachable felon. So, considering what was said about it in this record, we can conclude only that Willis's potential testimony was vague, impeachable, and potentially cumulative.

On the other hand, the evidence actually admitted strongly incriminated defendant. He was found in possession of Virginia Slims cigarettes, and much of the remaining stolen property from the burglary was found in the room he inhabited. He also resisted arrest after the items were found.

This record does not support a finding of prejudice in failing to call Willis as a witness. Therefore, defendant has not established a right to reversal for violation of his right to counsel.

Under these circumstances, we need not consider whether defendant's "waiver" of Willis's testimony was effective. Even assuming the waiver was ineffective, defendant has not established that the failure to call Willis as a witness was prejudicial.

The contention that defendant's right to counsel was violated is without merit.[1]

---

[1] Defendant also raised a second argument in his opening brief – that he could not be convicted of both taking and concealing the same property. However, in a letter to the court, defendant withdrew his argument on that issue.

8

## II

### *Reasons for Dismissing Prior Serious Felony*

At sentencing, the trial court decided to dismiss one of the two strikes alleged and proved by the prosecution. And the court gave its reasons for doing so on the record, but not in the written minutes. While the language of Penal Code section 1385 required the court to provide written reasons in the minutes when sentencing occurred in this case, the Legislature subsequently eliminated that requirement. The Attorney General argues that we should apply the old law; however, the current law is applicable.

After outlining the considerations in deciding whether to dismiss a strike, the trial court provided its reasoning as to this case and defendant. The explanation was specific and focused, and also long. It included defendant's age now and when he committed the serious felonies, homelessness, depression, drug use, loss of loved ones, family dysfunction, current offenses, impact on victims, dangerousness, lack of violence, lack of arming, criminal history, recidivism, and parole violations. With those considerations in mind, the court said: "The Defendant's criminal record . . . does not reflect the history or tendency towards overtly violent acts. And this aspect of the Defendant's record in this case, combined with the Court's consideration of all the other factors I have outlined a moment ago, persuades me that for the purposes of today's sentencing, the Defendant should be deemed, in part, to be outside the [spirit] of the three strikes sentencing scheme. That is insofar as one of his two prior strikes shall be stricken."

The court's minutes from the hearing reflect that the court found defendant to be partially outside the spirit and intent of the Three Strikes law, but the minutes did not give the details from the court's oral pronouncement.

The language of Penal Code section 1385 in effect at the time of the trial court's order required that the reasons for dismissal be stated on the record and set forth "in an order entered upon the minutes." (Pen. Code, former § 1385, subd. (a); Stats. 2000, ch.

9

689, § 3.)  The California Supreme Court interpreted that requirement as mandatory and held that failure to perform the mandatory function required reversal and remand "at least for the purpose of allowing the trial court to correct the defect by setting forth its reasons in a written order entered upon the minutes." (*People v. Bonnetta* (2009) 46 Cal.4th 143, 153.)

The Attorney General contends the order must be reversed and the matter remanded because the trial court failed to enter its reasons for the order in the minutes as required by Penal Code former section 1385.  However, Penal Code section 1385 was amended effective January 1, 2015. (Stats. 2014, ch. 137, § 1.)  That section now provides:  "The reasons for the dismissal shall be stated orally on the record.  The court shall also set forth the reasons in an order entered upon the minutes if requested by either party or in any case in which the proceedings are not being recorded electronically or reported by a court reporter."  (Pen. Code, § 1385, subd. (a).)

"If the judgment is not yet final because it is on appeal, the appellate court has a duty to apply the law as it exists when the appellate court renders its decision. [Citations.]"  (*Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 489.)   Under the current version of the statute, remand is not required.  The trial court stated the reasons for its order on the record, and no party requested that the reasons be entered in the minutes.

The Attorney General asserts that we should apply the law as it existed at the time of sentencing because no part of the Penal Code is retroactive unless so stated (Pen. Code, § 3), and the amendment to Penal Code section 1385 was not expressly made retroactive.  This assertion does not take into consideration that this case is not final.  Thus, applying current, existing law to this case is not a retroactive application of law.  Although the trial court was under a duty at the time of sentencing to provide written reasons in the minutes for the order dismissing a strike, the Attorney General is asking us to ignore that there is no such duty presently.  In other words, if we were to remand, there would be no duty for the trial court to provide written reasons.  The oral pronouncement,

10

as was given in the trial court already, would be sufficient.  Under these circumstances, we need not apply the law retroactively to conclude that remand is unnecessary because, applied prospectively, the law obviates the need for written reasons in a minute order.  And we are constrained by the California Constitution to refuse to impose such fruitless remands.  (Cal. Const., art. VI, § 13.)

In her opening brief, the Attorney General claims that the trial court abused its discretion by dismissing one of the strikes.  However, the brief provides no analysis but instead complains that the failure to record the reasons in the court's minutes for dismissing the strike "frustrates review of this claim."  To the contrary, the trial court provided a robust analysis of the reasons for dismissing the strike in the oral record.  Considered in context, the Attorney General's contention in the opening brief is simply that we must remand for the court to provide written reasons in the minutes.

In her reply brief, the Attorney General claims that the trial court's oral statement was conclusory and inadequate.  This is a claim defendant has not had an opportunity to respond to.  We ordinarily will not consider points raised for the first time in a reply brief because such consideration would deprive the other party of an opportunity to respond to the argument."  (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453.)  In any event, as we have noted, the trial court gave a robust analysis of why it was dismissing one strike.

### DISPOSITION

The judgment is affirmed.

                                                       __NICHOLSON__ , J.

We concur:

__BLEASE__ , Acting P. J.

__MURRAY__ , J.

11