Filed 3/1/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>S.M.,<br><br>      Defendant and Respondent. | A147596<br><br>(San Francisco City & County<br>Super. Ct. No. 223640) |

**I.**

**INTRODUCTION**

The People appeal from the trial court's dismissal of three felony and three misdemeanor criminal charges "in the furtherance of justice," pursuant to Penal Code[1] section 1385, all relating to acts by respondent S.M.[2] allegedly arising out of the submission of a single false insurance claim to his automobile insurer in the amount of $360. After the case was pending for four years, the court dismissed it on December 17, 2015. We conclude that the trial court did not abuse its discretion in dismissing the case.

**II.**

**THE TRIAL COURT DID NOT ABUSE ITS DISCRETION
IN DISMISSING THE COMPLAINT UNDER SECTION 1385**

**A. Procedural History**

On October 19, 2011, the San Francisco District Attorney's Office filed a criminal complaint charging S.M. with the following crimes all relating to the filing of an alleged

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] We use respondent's first and last initials throughout the opinion pursuant to California Rules of Court, rule 8.90(b)(10).

fraudulent and false insurance claim on or about March 21, 2011, to wit: Count 1—presenting a false or fraudulent insurance claim (§ 550, subd. (a)(1)); Count 2—conspiring to present a false and fraudulent claim for damages to a motor vehicle and/or its contents (§ 550, subd. (a)(4)); Count 3—presenting a knowingly false and misleading statement in support of an insurance claim (§ 550, subd. (b)(1)); Count 4—conspiring to present a knowingly false and misleading statement in support of an insurance claim (§ 550, subd. (b)(2)); Count 5—conspiring to conceal an event that affected a person's entitlement to, or the amount of, an insurance benefit (§ 550, subd. (b)(3)); Count 6—offering as true in connection with an investigation, a writing known to be forged, fraudulent, altered, or back-dated (§ 132); and Count 7—preparing a fraudulent and backdated writing to be presented in connection with an investigation (§ 134).

As a result of numerous requests for continuances by both sides, no preliminary hearing was held until February 2015. At the conclusion of the preliminary hearing, the trial court issued a series of orders, including allowing the prosecution to amend and add Count 8 alleging a violation of section 550, subdivision (a)(5); denying S.M.'s motion to reduce all counts to misdemeanors pursuant to Proposition 47; granting the prosecution's motion to dismiss Counts 6 and 7; and reducing Counts 3, 4, and 5 to misdemeanors.[3]

An information was filed on February 18, 2015, charging S.M. with the three remaining felony counts (violations of § 550, subds. (a)(1), (a)(4) & (a)(5)), and three misdemeanor counts (violations of § 550, subds. (b)(1), (b)(2) & (b)(3)). S.M., who was represented by new counsel, was arraigned and denied the charges on March 10, 2015.

Several more continuances were requested and granted,[4] and at a final hearing on December 17, 2015, over the prosecutor's objections, the trial court granted its own

---

[3] Although the court allowed the prosecution to add an amended Count 8, this count was dismissed by the prosecution before the information was filed.

[4] From March to December 2015, the trial court continued the case a total of seven times. Except for the continuance resulting from a written motion by the defense in July, the record does not reflect which, if either, party requested the continuances or the reasons for granting them.

motion to dismiss all remaining counts in the interest of justice. This appeal immediately followed that ruling.

**B. Statement of Facts Germane to the Charges[5]**

On March 21, 2011, S.M. attended a traffic court hearing at 850 Bryant Street, San Francisco. At 2:45 p.m., S.M. made an in-person police report with the San Francisco Police Department stating that he parked his car at 12:30 p.m. and returned at 1:30 p.m. to discover that someone had broken his car window and stolen his laptop computer. Later that same afternoon S.M. reported the break-in to his insurer, State Farm Insurance Company, and was told that his existing policy did not cover the loss.

That same evening, approximately five hours after his car was broken into, S.M. purchased comprehensive automobile insurance over the telephone with GEICO. When asked by GEICO whether he had any vehicle vandalized or stolen, "all or part," in the last five years, S.M. answered "no."

The next day, March 22, S.M. filed an online incident report with the San Francisco Police Department stating that, earlier that same day, March 22, at 1:30 p.m., S.M. returned to his vehicle and discovered that someone had smashed his passenger side window and stolen his computer.

On March 23, S.M. filed a claim of loss with his new insurer GEICO stating that the vehicle break-in occurred on March 22, after the inception of his GEICO policy.

On March 29, S.M. met with a GEICO investigator and, again, represented that the break-in occurred on March 22. S.M. then showed the investigator a copy of the online police report he had filed which stated the same. He claimed damage to his car for the broken window in the amount of $316.[6] He could not claim the loss of his stolen computer because his policy did not cover the loss of personal items.

Before any payment was made on the claim, GEICO discovered that the break-in occurred on March 21, prior to the inception of the GEICO policy, and not on March 22,

---

[5] The facts are taken from testimony presented at the preliminary hearing on February 9-10, 2015.

[6] A subsequent appraisal by GEICO of the window damage was $360.

3

as represented by S.M..  Had it known that the incident occurred on March 21 and not on March 22, there would have been no coverage for the damage.

### C. The Court Orders the Remaining Counts Dismissed Pursuant to Section 1385

On December 17, 2015, the trial court dismissed the information.  At the commencement of that hearing, the court noted that it had already informed counsel that it was "seriously considering exercising my discretion and dismissing this matter in the interest of justice."

In light of that prior notice, counsel for S.M. sent a two-page letter on December 2, 2015 (December 2 Letter), to the court and counsel explaining those factors relating to the case and to S.M. personally that warranted dismissal in the interest of justice.[7]

The December 2 Letter began by outlining S.M.'s professional background, pointing out that he earned a Master of Science degree in electronics and communication engineering from Monmouth University and another Master of Science degree in physics from Quaid-E-Azam University in Islamabad, Pakistan.  His working career spanned more than 20 years and included employment with Cisco, AT&T, and IBM.  He was the then-current CEO and chair of the board of BOLO Network, Inc., which provides networking and storage security solutions to companies, including Internet service providers.  Counsel argued that given this background and the sophisticated nature of his clients, "a fraud-based conviction would have a devastating effect on his ability to carry on his work."[8]

The December 2 Letter went on to state that appellant had no criminal record, and that he was the father of two high school-aged children.

---

[7] This letter was submitted to this court with a motion to augment the record on appeal, which motion was granted by an order dated August 12, 2016.

[8] While the focus of the December 2 Letter was the felony counts, counsel also explained that S.M. was reluctant to consider pleading even to the misdemeanor counts because of the "negative impact it would have on his professional life."

4

Looking at the nature of the alleged criminal misconduct, counsel pointed out that even if the charges were proved, the amount claimed against GEICO was $360, a sum that was never actually paid by GEICO.

The prosecutor submitted nothing in writing prior to the December 17 hearing, nor were any objections made concerning counsel's letter.

At the hearing, after counsel stated their appearances, the court began its comments and colloquy with counsel:

"THE COURT: The last time we were here I had indicated to both sides that I was seriously considering exercising my discretion and dismissing this matter in the interest of justice.

"I did receive a letter from [defense counsel] on December 2nd, and I did have the opportunity to go back and look at some of the authority regarding what would be an appropriate exercise of my discretion under 1385.

"And I'm inclined after reviewing the totality of the circumstances being familiar with the facts of this case intimately from when it started off in one of the preliminary hearing courts. I am mindful of the fact that [S.M.] has had no criminal record other than this, that this has been going on for four years now, he has not been in trouble.

"The purported loss in this matter, if he had been successful in submitting this claim to Geico having been paid on was $360. I am also taking into account his age, his background in terms of his professional impact it would have on him, and the fact that there has been no actual loss. In my view charging him with these matters, some of which are non-reducible, correct?

"[DEFENSE COUNSEL]: Correct.

"THE COURT: Is a miscarriage of justice and disproportionate to the type of offense that he engaged in.

"So what the Court is going to do on its own motion and should be reflected in the minutes, as it has to be under the law, is going to dismiss this matter 1385 in interest of justice as to all six counts.

"[PROSECUTOR]: Your Honor, may I be heard?

5

"THE COURT: You can absolutely be heard.

"I can tell you right now, if this is the District Attorney's office's idea of a wise allocation of resources, that's my reason for this. I am looking at this individually, not for court convenience, not for court calendar, but it is a sense that this is an unjust prosecution by the People that has subjected this person to a four-year process where, it's completely disproportionate to the conduct he may or may not have engaged in, but go ahead.

"[PROSECUTOR]: Your Honor, there is, other than the Court's power under 1385 of the Penal Code, defense has been unable to cite any authority for dismissal of these charges.

"There was no 995 brought or anything like that on any of the charges. Simply because there is no authority for dismissal of the charges short of the Court exercising it's [*sic*] discretion under 1385.

"Your Honor, this case has gone on for a number of years, but nonetheless, the case has been going on simply because [S.M.], we were unable to get it to trial or unwilling to accept responsibility for what he did in this case.

"So I think that this sends a message, he has basically gone now through four attorneys, gone through preliminary examination. And, in essence, the Court is dismissing this case after [S.M.] has basically really just drug [*sic*] this case out as long as he could.

"That simply is, in my opinion, to say that you could win the battle of dragging a case out and getting dismissed after a couple years or few years.

"THE COURT: That's not my reason for dismissing it. The fact of the matter that it has been aged is one matter I have taken into account, whether this defendant has reengaged or engaged in some sort of fraudulent activities.

"The reason this case is so old is because the position taken that this man should admit to a felony offense or an offense that's going to essentially prevent him from earning a living in his chosen profession. And he has been attempting to convince the other side, you know, as to the unjustness or unfairness of that whole process.

6

"The fact that it's taken a couple lawyers to do that, you know, that's his right.

"You're right, the defense can invite the Court to consider exercising its discretion, and that's what's occurring here.  So I'm not going to change my mind.

"Matter dismissed under 1385."

**D.  Discussion**

Section 1385, subdivision (a) provides: "The judge or magistrate may, either on his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed.  The reasons for the dismissal shall be stated orally on the record.  The court shall also set forth the reasons in an order entered upon the minutes if requested by either party or in any case in which the proceedings are not being recorded electronically or reported by a court reporter.  A dismissal shall not be made for any cause that would be ground of demurrer to the accusatory pleading."

The standard for appellate review of a decision to dismiss charges or allegations in the furtherance of justice is whether the trial court abused its discretion in making that decision.  (*People v. Ortega* (2000) 84 Cal.App.4th 659, 666, review den.)

" 'From the case law, several general principles emerge.  Paramount among them is the rule 'that the language of [section 1385], "furtherance of justice," requires consideration both of the constitutional rights of the defendant, and the interests of society represented by the People, in determining whether there should be a dismissal. [Citations.]'  [Citations.]  At the very least, the reason for dismissal must be 'that which would motivate a reasonable judge.'  [Citations.]"  (*People v. Orin* (1975) 13 Cal.3d 937, 945, italics omitted (*Orin*).)  "Courts have recognized that society, represented by the People, has a legitimate interest in 'the fair prosecution of crimes properly alleged.' [Citation.]  ' "[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion." [Citations.]' "  (*Orin*, *supra*, 13 Cal.3d. at p. 947.)

"From these general principles it follows that a court abuses its discretion if it dismisses a case, or strikes a sentencing allegation, solely 'to accommodate judicial

7

convenience or because of court congestion.' (*People v. Kessel* (1976) 61 Cal.App.3d 322, 326.) A court also abuses its discretion by dismissing a case, or a sentencing allegation, simply because a defendant pleads guilty. (*Orin, supra*, 13 Cal.3d at p. 949.) Nor would a court act properly if 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant,' while ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' (*People v. Dent* (1995) 38 Cal.App.4th 1726, 1731.)" (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 530-531, as modified on denial of rehg. (Aug. 21, 1996) (*Romero*).)

The reasons for the dismissals as stated by the court included S.M.'s age, the fact that he had no prior criminal history, and he had not reoffended in the more than four years the case had been pending. Referencing his education and experience, the court also agreed with defense counsel's comments in the December 2 Letter, noting the impact a fraud conviction would have on S.M.'s future career.[9] The court was also impressed by the amount of resources spent in pursuing an alleged fraudulent insurance claim worth $360, where there was no actual loss.

---

[9] No objection was made at or before the hearing by the prosecutor addressing the statement made in the December 2 Letter about the potential "devastating" impact a fraud conviction would have on S.M.'s career in high tech security, or to the court's conclusion that this would be the likely result from any conviction. On appeal for the first time, the People argue that there was no "evidence" of such an impact, and that the trial court "failed to inquire further how the felony conviction would prevent Respondent from earning a living in his chosen profession . . . ." The time to make that objection was during the hearing on December 17, 2015, as now it has been forfeited. (*People v. Boyette* (2002) 29 Cal.4th 381, 423–424; *People v. Mattson* (1990) 50 Cal.3d 826, 853–854, superseded by statute on another ground, *People v. Jennings* (1991) 53 Cal.3d. 334, 387, fn. 13; *In re Heather H.* (1988) 200 Cal.App.3d 91, 96.) In any event, we disagree that "proof" of such a causal relationship is necessary where a fair inference can be drawn that any fraud convictions, let alone felony fraud convictions, would damage, if not end, a career in security for high tech companies, including Internet providers. Such an inference can reasonably be drawn from S.M.'s education, work experience, and his current position.

8

While the diminutive amount of the loss[10] is not controlling on the matter, the nature of the offense does form part of the calculus the court must use in determining how best to balance the interest in dismissing the case against the harm to the public. (*Romero*, *supra*, 13 Cal.4th at pp. 530-531.)

Alternatively, the People urge that the dismissals give S.M. "special status" because of his career choice. As we have noted, consideration of his age, education, criminal record, and experience are all recognized "individualized considerations" courts are to consider in deciding whether relief under section 1385 would be in the furtherance of justice. (*Romero*, *supra*, 13 Cal.4th at pp. 530-531.)

The People also note that the fact that several of the counts under section 550, subdivision (a) are punishable only as felonies served to underscore how the Legislature views the importance of curbing insurance fraud. That may be so, but it does not dilute the power of a court to exercise discretion to dismiss such charges where it fairly concludes that the interests of justice are furthered by that action. "[T]here must be ' "a clear legislative direction" ' eliminating the trial court's section 1385 authority." (*People v. Fuentes* (2016) 1 Cal.5th 218, 226.)

We do not disagree with the People's general assertion that the dismissal of their information here deprived the public of the opportunity to curb fraud against the insurance industry. However, the dismissal of virtually any criminal charge in the interest of justice will have collateral consequences, if not more significant consequences than the dismissals here. The most obvious example came 20 years ago in *Romero,* where the Supreme Court authorized the use of section 1385 to strike prior serious or violent convictions which otherwise would have led either to the doubling of the sentence for the current crime, or the imposition of a 25 years-to-life prison sentence for the current crime. (*Romero*, *supra*, 13 Cal.4th at p. 530.) So long as the trial court balances the interests of justice in a rational way, appellate courts have, and will, give their

---

[10] The People point out that, while the amount of the claim was never paid, GEICO also was entitled to recover as restitution its investigative costs and expenses. There is nothing in the record quantifying those amounts.

9

imprimatur to such dismissals, even where the exercise of that judgment deprives the prosecutor of asserting enhanced penalties. (*People v. Clancey* (2013) 56 Cal.4th 562, 579; *People v. Bishop* (1997) 56 Cal.App.4th 1245 [no abuse of discretion in dismissing two prior strikes where current offense was petty theft].)

Two years after *Romero* was decided, in *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*), the high court took the opportunity to clarify the approach trial and appellate courts should take in considering dismissals under section 1385. (*Id.* at p. 152.) In grappling with the concept of "furtherance of justice," the court suggested there were two general orientations: one seeking justice outside the bounds of the legal scheme to which the defendant is subject, and one which looks for justice within the legal scheme's interstices, "informed by generally applicable sentencing principles relating to matters such as the defendant's background, character, and prospects." (*Id.* at p. 160.)

The majority concluded that an attempt to look within the scheme in question, "as informed by generally applicable sentencing principles," is the better approach, and the one that "offers some prospect of success." (*Williams*, *supra*, 17 Cal.4th at p. 160.) Thus, in considering whether the furtherance of justice is served by dismissal under section 1385, no weight should be accorded factors extrinsic to the scheme, such as court congestion or the "bare antipathy to the consequences for any given defendant." (*Id.* at p. 161.) Instead, "preponderant weight must be accorded to factors intrinsic to the scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects." (*Ibid.*)

Just as this approach informs the decision to strike prior convictions under section 1385 for purposes of the Three Strikes law, it likewise is plainly applicable to decisions to dismiss portions or all of a criminal information under that same statute, and is consistent with the principles articulated in *Orin*, *Dent*, and *Romero* discussed above. Following this matrix is precisely what the trial court did in this case. The focus was on the nature and circumstances of the current offenses, S.M.'s background, character, and prospects, and his lack of a criminal record. In applying those factors, including the

10

interest of society in having crimes punished, the court concluded that the furtherance of justice weighed in favor of dismissal. We discern no abuse of discretion in so concluding.

In finding no abuse of discretion we note that the two principal cases relied on by the People are distinguishable. In *People v. McAlonan* (1972) 22 Cal.App.3d 982, the defendant had been charged with possession of marijuana. After the parties rested during a court trial, the trial court delayed the case in order to determine through the probation department what effect a conviction would have on the defendant's plans to enlist in the United States Navy. (*Id.* at p. 984.) While the investigation was pending the trial court entered an order dismissing the charge,[11] noting generally that "the interests of the defendant and of his rehabilitation, and the interests of society in his rehabilitation" would be better served by dismissal. (*Ibid.*)

The appellate court reversed the dismissal finding that the conclusory language used by the trial court as justification for the dismissal did not satisfy the legal requirement in section 1385 that the court's minutes reflect the factual basis for the decision.[12] The court noted in dicta that a proper dismissal required a balancing of society's interest against that of the defendant's rehabilitation. Using that scale the court concluded that society's interest in having the dismissal statute "dispensed with an even hand" precluded the tool of dismissal from being used simply to avoid a conviction. (*People v. McAlonan*, *supra*, 22 Cal.App.3d at p. 987.)

In *People v. Superior Court* (*Montano*) (1972) 26 Cal.App.3d 668, the trial court's dismissal order was supported by a statement of reasons equally as conclusory as that ineffectively used by the court in *McAlonan*. In *Montano*, the defendant was tried by a

---

[11] The original dismissal order contained no statement of reasons. Thereafter, the court ordered the minutes amended nunc pro tunc to reflect its reasoning. (*Id*. at p. 985.)

[12] Section 1385 was amended in 2014 adding that the statement of reasons must be "entered upon the minutes" only if requested by one of the parties or when the courts statement of reasons is not either electronically recorded or reported by a court reporter. (Sen. Bill No. 1222 (2014 Reg. Sess.) § 1.) (*People v. Jones* (2016) 246 Cal.App.4th 92, 95-96.)

11

jury and convicted of a drug possession charge. At the sentencing hearing the trial judge reduced the conviction to a misdemeanor and then dismissed the conviction under section 1385 because it would be in the best interests of the defendant's family relationship to do so. (*Montano*, at p. 670.) The reviewing court found this statement of reason to be "purely subjective" and an insufficient basis for dismissal under the statute.[13]

As we have noted earlier in this opinion, the trial judge here was explicit in his reasons for balancing the scale in favor of dismissal. In addition to the impact on the defendant's future career in high tech security, the court noted that S.M. had no criminal history either before the events that resulted in the current charges or since.[14]

Surely not all judges would take the action employed by the trial court here. But, the question we must answer is whether any reasonable judge could do so in his or her discretion. (*People v. Philpot* (2004) 122 Cal.App.4th 893, 904-905.) Given the factors articulated by the court, we conclude the answer is in the affirmative, and we find no abuse of discretion.

---

[13] The *Montano* court also observed that the general consideration relied on to dismiss the conviction could be adequately taken into account at the time of sentencing. (*Ibid.*) While S.M.'s age and crime-free record were matters that could be considered at a subsequent sentencing, the court's concern for the impact a conviction would have on his career were not concerns that could be assuaged at sentencing. At any rate, it is no answer to suggest that the Legislature's grant of judicial discretion by enacting section 1385 can be eviscerated simply if the court otherwise can mitigate a sentence following a conviction.

[14] S.M. is not a young man. His counsel pointed out in his letter that S.M. had two high school-aged children and had been working in the high tech and architectural industries after earning his degrees for more than 20 years. The fact that he is relatively older is a relevant consideration. (See *People v. McGlothin* (1998) 67 Cal.App.4th 468, 474–475 [We "consider the nature and circumstances of the present crimes; the defendant's prior convictions; his background, character and prospects."].) In *McGlothin*, the court considered the fact that the 40-year old defendant had been engaged with the criminal justice system for half of his life, a consideration found to be relevant to the adjudication of a motion to dismiss under section 1385. (*Id.* at p. 476.)

## III.

## DISPOSITION

The judgment is affirmed.

_____
RUVOLO, P. J.

We concur:

_____
RIVERA, J.

_____
STREETER, J.

Trial Court:                  San Francisco City & County Superior Court

Trial Judge:                Honorable Bruce E. Chan

Counsel for Appellant:      San Francisco District Attorney's Office, George Gascón, District Attorney, Lawrence De Souza, Assistant District Attorney, and Alexis Feigen Fasteau, Assistant District Attorney.

Counsel for Respondent:    Law Offices of Doron Weinberg, Doron Weinberg.

A147596, *People v. S.M.*

14