Filed 8/18/17

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| THE PEOPLE, | ) | BR 053046 |
| Plaintiff and Appellant, | ) | East Los Angeles Trial Court |
| v. | ) | No. 4CA14996 |
| TOLUCA LAKE COLLECTIVE, INC. et al., | ) | |
| Defendants and Respondents. | ) | **OPINION** |

APPEAL from a judgment of the Superior Court of Los Angeles County, Melissa Widdifield, Judge.  Reversed.

Michael N. Feuer, City Attorney, City of Los Angeles, Asha Greenberg, Assistant City Attorney, Meredith A. McKittrick, Deputy City Attorney, and John Prosser, Deputy City Attorney, for Plaintiff and Appellant.

Eric D. Shevin and Stephen J. Fisch of the Shevin Law Group for Defendants and Respondents.

*          *          *

1

INTRODUCTION

A misdemeanor complaint was filed on June 20, 2014, charging defendants Toluca Lake Collective, Inc. (TLC), Frank Jay Sheftel (Sheftel), Hatteras Holdings, LLC, and Peter Welkin with operating an unlawful medical marijuana business (MMB) in violation of Los Angeles Municipal Code (LAMC) section 45.19.6.2, subdivision A,[1] on August 26, 27, and 28, 2013, and the illegal use of land (§ 12.21, subd. A) based on the operation of the MMB.

Following an evidentiary hearing on the applicability of the limited immunity provided in section 45.19.6.3, the court found defendants substantially complied with the requirements for the affirmative defense, including subdivision B's registration requirement contained therein. Based on its finding that the immunity applied "as a matter of law" to bar prosecution, and pursuant to Penal Code section 1385, the court dismissed all charges against defendants.

The People appeal from the order of dismissal, contending that substantial compliance was applied in error to the immunity requirement of section 45.19.6.3, subdivision B, and that the court abused its discretion under Penal Code section 1385. We reverse.

BACKGROUND

*Motion in Limine*

On May 19, 2015, defendants filed a motion in limine, seeking to allow evidence and argument at trial that defendants qualified for immunity from prosecution pursuant to section 45.19.6.3. Defendants asserted that TLC was open and operating prior to the passage of Interim Control Ordinance No. 179027 (ICO)[2] on September 13, 2007, and that, after the passage of the ICO, Sheftel went to the city offices in the Van Nuys Government Center, on October 15, 2007, to register TLC as an MMB. He met with a city employee who was unfamiliar with the ICO registration process but who nevertheless assured Sheftel that he was "in compliance." The employee printed and date-stamped "a screen shot" for Sheftel

_____

[1]All further statutory references are to the LAMC unless otherwise indicated.

[2]On August 1, 2007, the City Council passed the ICO which imposed a moratorium on new MMB's and required existing MMB's to cease operations. (ICO, § 2.) The ICO also contained an exception for MMB's that were established before the effective date of the ICO, if they had registered with the City Clerk by November 13, 2007.

2

(exhibit A), as proof that Sheftel had registered TLC on that date. On August 25, 2008, the City issued an order to comply (exhibit C), requiring defendants to discontinue their operation of their MMB. Consequently, Sheftel met with city staff and filed a hardship application on September 8, 2008. After this meeting, TLC was placed on a list of "Now Open Pre-ICO collectives" (exhibit E). In May of 2010, defendants learned that the City had changed its position regarding TLC's ICO registration.

*The People's Response*

On August 25, 2015, the People filed their response, arguing that defendants could not demonstrate they were entitled to limited immunity under section 45.19.6.3 because they failed to satisfy subdivision B's ICO registration requirement. The People argued that the City Clerk had no record of an ICO registration packet for defendants; any filing in the city offices in Van Nuys was inadequate, as it was not the Office of the City Clerk; and the submission of a registration package in September of 2008 was untimely.

*Evidence Code Section 402 Hearing*

The court conducted an Evidence Code section 402 hearing on December 1, 2015, regarding defendants' compliance with the ICO registration requirement. The defense called Jose Zaragoza, a former tax compliance officer for the City, who worked in the Office of Finance at the Van Nuys branch in 2007. Zaragoza testified that at the time of his employment with the City he had no authority to act on behalf of the Office of the City Clerk, and there was no office for the City Clerk in Van Nuys. He further testified that he was unfamiliar with the ICO; had no recollection of Sheftel or receiving any documents from him; had no knowledge of receiving any filings for MMB's, other than business tax registration certificate applications; and did not recall ever forwarding any documentation to the City Clerk's Office.

Zaragoza identified exhibit A as "a print screen" of a computer system that had been used to enter business tax applications. He confirmed that the printout contained his signature and a date file stamp. He stated he did not know what prompted the printout and that the stamp did not indicate receipt of any documents. When the prosecutor showed Zaragoza an exemplar

3

of a "Medical Marijuana Dispensary Business Information Form" (Business Information Form), he stated that he had never seen such a form before.

The hearing was continued to December 11, 2015. On that date, the defense called Sharon Dickinson, who worked for the City Clerk's Office. She testified that the City Clerk's Office was the "receiving agent for the city and custodian of records" for documents required under the ICO. She further testified that in September 2008 she met with Sheftel regarding TLC's registration under the ICO. Sheftel told Dickinson that he had filed the required documents with the Office of Finance in Van Nuys. When Dickinson called that office, she was told there was no record of such a filing.

Defense counsel showed Dickinson exhibit B, which was a list of ICO-registered MMB's, dated September 9, 2008, and directed her attention to the last entry listing TLC as a registered MMB. Next to the entry, the following notes were made: "9/9/08. Added to list. Application was originally submitted on 10/15/07, but was inadvertently misdirected by City staff. New location pending hardship application. 11436 Hatteras Street." Dickinson explained that the notes were added by Daisy Mo from "code enforcement" in reliance on Sheftel's "word" and based on his presentation of exhibit A. Dickinson was later instructed by "Clerk Management" to remove TLC from the list of registered MMB's, and on June 23, 2010, Sheftel was notified of the change.

Sheftel testified that in 2007 he was the operator of TLC and that currently he was a member. In 2007, he learned of the requirement to register under the ICO through the "media." On October 15, 2007, he went to Van Nuys City Hall, assuming that it was also the City Clerk's Office, and filed "a packet of papers for the ICO" with Zaragoza at the Office of Finance. Zaragoza was confused by the papers Sheftel presented; went to speak to his supervisor; upon his return, accepted Sheftel's documents; and, in return, gave Sheftel exhibit A. Sheftel kept a copy of the paperwork he submitted to Zaragoza, but not a copy of the Business Information Form. Sometime in 2008, he received an order to comply from the City and subsequently met with Dickinson and Mo. Dickinson and Mo contacted Van Nuys, accepted Sheftel's paperwork, and gave him a hardship application. On June 23, 2010, Sheftel

4

received a letter from the City stating that TLC was being removed from the ICO registration list.

*February 11, 2016, Hearing*

The court heard argument on February 11, 2016. Defense counsel maintained defendants actually and substantially complied with the ICO registration requirement because Sheftel had submitted all the necessary documents to city personnel, and the City ultimately made the "determination" to place TLC on the list of registered MMB's.

The prosecutor countered that the ICO specifically required documentation to be filed in the "Office of the City Clerk," and there was no evidence that anything was filed with the City Clerk in 2007. The prosecutor stated it was "the People's position that substantial compliance does not apply to limited immunity."

The court granted defendants' motion in limine. The court concluded the goal of the ICO was only to allow the operation of MMB's that were "good businesses" and were in existence as of 2007. It further found that such a purpose was "not thwarted" by applying substantial compliance to the ICO's registration requirement because TLC was open and operating as of 2007 and had all the documents required for registration.[3]

*August 4, 2016, Hearing*

On August 4, 2016, the trial court addressed whether the substantial compliance issue presented a question of law to be decided by the court or a question of fact for the jury.

The prosecutor asserted that the court had simply been asked to make preliminary findings of fact, and not to make a finding "as a matter of law" that defendant satisfied subdivision B. Nevertheless, the court stated that it was unnecessary to send the case to the

---

[3]The court stated, "It seems to me, given the totality of the circumstances here with what the goal of the I.C.O., the goal of Proposition D, . . . which is the moratorium for the I.C.O., . . . to only have in existence those businesses that were in existence as of 2007 has been met and that the goals of Proposition D have also ultimately been met in that its goal was to make sure you had good businesses operating for lack of a better word to prevent all the secondary, tertiary effects of the pot shops. [¶] And given this, the Court finds that the defense has provided sufficient evidence . . . of substantial compliance with the I.C.O. [¶] Now, the question remains . . . whether I need to make the ultimate decision--legal decision on substantial compliance or whether it's a jury issue. . . ."

jury because the issue of compliance with the ICO did not turn on the credibility of witnesses.

The court stated that, although TLC "technically" failed to comply, "in that [the] packet of documents was not filed . . . downtown," but rather "at the Van Nuys Office of Finance," it nevertheless had done what was "necessary under Proposition D" and the ICO, including obtaining "the B.T.R.C, the seller's permit, insurance, and the lease agreement," "all [which] demonstrate a business . . . has been operating . . . aboveboard and . . . within the law since 2007." The court determined that the substantial compliance doctrine could be applied to the requirement to register with the City Clerk and found "as a matter of law" that defendants "substantially complied with both the I.C.O. and Proposition D."

In dismissing the case, the court stated, "alternatively, the Court cannot in the interest of justice justify sending this case to a jury. [¶] . . . Primarily, my ruling is based on substantial compliance as a matter of law . . . but, alternatively, that it is in the interest of justice to dismiss this case, given the totality of the circumstances in this case."

DISCUSSION

*Standard of Review*

We review the trial court's dismissal of the charges based on the finding that defendants substantially complied with the limited immunity provisions of section 45.19.6.3 for an abuse of discretion. (See *People v. Smith* (2016) 245 Cal.App.4th 869, 873.) The dismissal of charges in the interests of justice pursuant to Penal Code section 1385 is also reviewed for an abuse of discretion. (*Ibid.*) "'"""[T]he scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion."' [Citation.] To the extent the trial court's ruling is based on assertedly improper criteria or incorrect legal assumptions, we review those questions de novo." [Citations.]' [Citation.]" (*Property Reserve, Inc. v. Superior Court* (2016) 6 Cal.App.5th 1007, 1018.)

*Substantial Compliance—Immunity Provision*

6

Section 45.19.6.2 prohibits owning, establishing, operating, using, or permitting the establishment or operation of an MMB. Section 45.19.6.3[4] provides for a limited immunity that may be asserted as an affirmative defense.

In this appeal, we are asked to consider whether the doctrine of substantial compliance applies to the statutory requirements of section 45.19.6.3 (limited immunity provision). The precise issue is whether filing documents for registration under the ICO at a location other than "the Office of the City Clerk" constitutes substantial compliance with section 45.19.6.3, subdivision B's registration requirement. When the decisive facts are undisputed, we are confronted with a question of law and are not bound by the findings of the trial court. (*Plaza Home Mortgage, Inc. v. North American Title Co., Inc.* (2010) 184 Cal.App.4th 130, 135.)

"Limited immunity from prosecution . . . is unavailable . . . where the MMB violates any of the 15 restrictions set forth in LAMC section 45.19.6.3." (*People v. Trinity Holistic Caregivers, Inc.* (2015) 239 Cal.App.4th Supp. 9, 16 (*Trinity*).) "A defendant is barred from asserting immunity if any listed restrictions apply, including if the MMB was not in operation since 2007 as evidenced by a specified business tax registration or tax exemption certificate; the MMB did not register with the City Clerk in 2007 in accord with an interim control ordinance; the MMB failed to obtain a specified business tax registration in 2011 or 2012, and renew the registration; and if marijuana in the MMB is visible from the exterior of the business. [Citation.]" (*People v. CHR Herbal Remedies* (2017) 12 Cal.App.5th Supp. 26, __ (*CHR Herbal Remedies*).)

---

[4] "Notwithstanding the activities prohibited by this Article, and notwithstanding that [MMB] is not and shall not become a permitted use in the City for so long as this Article remains in effect, [an MMB] shall not be subject to the remedies set forth in Los Angeles Municipal Code Sections 11.00 or 12.27.1 solely on the basis of: (1) an activity prohibited by Section 45.19.6.2; and (2) the fact that [MMB] is not a permitted use in the City, provided however that, as authorized by California Health and Safety Code Section 11362.83, this limited immunity is available and may be asserted as an affirmative defense only so long as subsections A. through D. and G. through O. of this Section 45.19.6.3 remain in effect in their entirety, only by [an MMB] at the one location identified in its original or any amended business tax registration certificate issued by the City, and only if that [MMB] does not violate any of the following medical marijuana business restrictions: [enumerating 15 restrictions]."

As relevant to this appeal, LAMC section 45.19.6.3, subdivision B, provides, "Every [MMB] is prohibited that did not register *with the City Clerk* by November 13, 2007 in accordance with all requirements of the City's [ICO]." (Italics added.)

The ICO states, in pertinent part, "The prohibitions [against the establishment and operation of MMB's] specified in Section 2 of this ordinance shall not apply to any Medical Marijuana Dispensary established before the effective date of this ordinance and operated in accordance with State law, if the owner or operator of the Medical Marijuana Dispensary complies with the following requirements: [¶] A. File the form, designated by the Office of the City Clerk, and the following documentation *with the Office of the City Clerk* within 60 days of the adoption of the Interim Control Ordinance: City of Los Angeles Tax Registration Certificate, State Board of Equalization seller's permit, property lease, business insurance, and dispensary membership forms and, if needed, Los Angeles County Health Department permit. . . . [¶] B. This exception only applies to a facility that otherwise meets all requirements of the LAMC and is open for business on the effective date of this ordinance." (ICO, § 3, italics added.)[5]

In *Trinity*, we considered a different aspect of the ICO registration requirement. There, we concluded that the limited immunity defense was unavailable for a defendant who had failed to strictly comply with section 45.19.6.3, subdivision B's ICO registration requirement because the documents submitted by the defendant failed to show the MMB was open and operating legally as of September 14, 2007. (*Trinity*, *supra*, 239 Cal.App.4th at p. Supp. 19.) In *People v. Onesra Enterprises, Inc.* (2016) 7 Cal.App.5th Supp. 7, 16 (*Onesra*), we held substantial compliance did not apply to section 45.19.6.3, subdivision E's requirement to obtain and renew business tax registration. Most recently, in *CHR Herbal Remedies*, *supra*, we held that applying substantial compliance to section 45.19.6.3, subdivision O, "would disserve the purposes underlying the distance requirements [contained therein]." (*Id.* at p. Supp. __.) We

---

[5]Section 4 of the ICO provides for a hardship exemption: "The City Council, acting in its legislative capacity and by resolution, may grant an exemption from the provisions of this ordinance in cases of hardship duly established to the satisfaction of the City Council. An application for a hardship exemption shall be obtained from and filed with the City Clerk."

concluded, "The clear terms of [section 45.19.6.3] indicate strict compliance with the immunity provisions was required. [Citations.]" (*Id.* at p. Supp. __.) In line with the aforementioned decisions, we hold that the doctrine of substantial compliance does not apply to subdivision 45.19.6.3, subdivision B's requirement to register *with the City Clerk*.

"""Substantial compliance . . . means actual compliance in respect to the substance essential to every reasonable objective of the statute." [Citation.] Where there is compliance as to all matters of substance[,] technical deviations are not to be given the stature of noncompliance. [Citation.] Substance prevails over form. When the plaintiff embarks [on a course of substantial compliance], every reasonable objective of [the statute at issue] has been satisfied.' [Citation.] . . . [Citation.] Furthermore, the doctrine of substantial compliance does not apply at all when a statute's requirements are mandatory, instead of merely directory. [Citations.] A mandatory statute 'is one that is essential to the promotion of the overall statutory design and thus does not permit substantial compliance. [Citation.]' [Citation.]" (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1332-1333, italics omitted.)

The critical inquiry, here, is whether the policies underlying the requirement to "register with the City Clerk" were served in this case. (See *Trinity*, *supra*, 239 Cal.App.4th Supp. at p. 19.) We conclude they were not. The LAMC specifically mandated, inter alia, ICO registration "with the City Clerk" in order to qualify for immunity. The ICO, which is incorporated by reference, is even more explicit, designating "the Office of the City Clerk" as the location for filing the necessary documentation. Requiring that the registration process be done *with the City Clerk*—the City's receiving agent and custodian of records—ensures that the documents are received by the City so that the City can determine which MMB's were open and operating in compliance with the law as of September 14, 2007. (See ICO, §§ 2, 3.)

Were MMB's allowed, by substantial compliance, to file documents at *any* city office, the underlying purposes of section 45.19.6.3, subdivision B, would not be promoted. Permitting an MMB to file at a satellite city office would place an untoward burden on the City, and would increase the risk that the documents would not be received by the City. Indeed, in the case *sub judice*, there is no evidence that ICO registration paperwork was ever received by

9

the City Clerk's Office, and the City sent Sheftel the order to comply based on this perceived failure of registration.[6] Sheftel's filing of his ICO paperwork (assuming they were filed) at the Van Nuys Finance Office cannot be viewed as a "technical imperfection[] of form." As we stated in *Trinity*, "Nothing in the ICO suggests that the filing requirement was pointless or optional." (*Trinity*, *supra*, 239 Cal.App.4th at Supp. 19.)

In the broader context of the City's ban on MMB's and given the stringent standards for immunity (*Onesra*, *supra*, 7 Cal.App.5th at p. Supp. 16), we conclude the requirement to register with the City Clerk is mandatory rather than simply directory and that strict compliance is essential to the promotion of the overall statutory design. (See *Troyk v. Farmers Group, Inc.*, *supra*, 171 Cal.App.4th at p. 1333; *Trinity*, *supra*, 239 Cal.App.4th at p. Supp. 19 ["the documents required by the City [for registration under the ICO] were critical to substantiating that all MMB's registered with the City were in fact open and operational as of the September 14, 2007 deadline"].) Accordingly, the doctrine of substantial compliance does not apply to section 45.19.6.3, subdivision B's requirement that an MMB register with the City Clerk.

Defendants contend the court's dismissal based on "substantial compliance" was harmless error because they submitted substantial evidence of compliance with section 45.19.6.3, subdivision B, at the Evidence Code section 402 hearing. Defendants, however, seem to ignore that the court originally ruled that evidence in support of the immunity defense could be admitted at trial, *but there was no such trial*.

The purpose of a hearing under Evidence Code section 402, which governs the procedure for determining foundational and other preliminary facts, is simply to decide *preliminary* questions of fact upon which the admissibility of evidence depends. (See *People v. Superior Court (Blakely)* (1997) 60 Cal.App.4th 202, 208-209 & fn. 6.) At the August 4, 2016, hearing, the prosecutor attempted to remind the court that it had only been asked to make

---

[6]At the February 11, 2016, hearing, the prosecutor pointed out, "If Mr. Sheftel had gone to the City Clerk's office at City Hall where he was supposed to go, they would have known exactly what he was there for. They wouldn't have had to go and talk to a supervisor and try to figure out what he was doing. [¶] . . . They had all sorts of forms and ways of doing things. They knew. They were set up for this. [¶] . . . [¶] Mr. Zaragoza testified that . . . he's never seen a registration form in his life."

preliminary findings of fact, not to decide the case as a matter of law. Once the court decided the doctrine of substantial compliance applied to section 45.19.6.3, subdivision B's ICO registration requirement and that there was sufficient evidence to support the immunity defense, defendant still had the burden of proving the elements to *the jury*.[7] (See *People v. West Caregivers, Inc.* (2015) 242 Cal.App.4th Supp. 24, 37.)

*Interest of Justice*

As a direct result of its finding that section 45.19.6.3 immunity barred prosecution, the court stated that it was "not *in the interest of justice* to use any more City resources or State resources on this matter." (Italics added.)

Section 1385, provides in relevant part, "The judge . . . may, either on his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."

Appellate review of whether the trial court abused its discretion under Penal Code section 1385 "'"requires consideration both of the constitutional rights of the defendant, and the interests of society represented by the People, in determining whether there should be a dismissal. [Citations.]" [Citations.] At the very least, the reason for dismissal must be "that

---

[7]At the February 11, 2016, hearing, the prosecutor stated, "taking Ms. Dickenson's [*sic*] testimony, taking the documentary evidence that [defense counsel] has provided, I can say it appears probable that in September of 2008, Mr. Sheftel had all the documents he was required to have in . . . 2007 before the registration date . . . deadline. But I cannot say that he had them in 2007 before the registration deadline. I'm unable to say that." The court also remarked, "I think if . . . I grant [defense counsel's] motion [in limine] . . . that's a[n] evidentiary issue for trial."

Later at the same hearing, the trial court attempted to clarify what it was being asked to do. The court asked, "[S]o can you both agree that I have to legally conclude there's been substantial compliance? Or—I thought you were saying that it was a factual issue for the jury." Defense counsel responded, "I think this Court has to make a determination on the law whether substantial compliance applies so that it can go to the jury or Your Honor, as Court trial, sum trier of fact. But I think we can't just make that argument unless this Court rules as a matter of law."

Thus, while the central issue litigated at the February 11, 2016, and August 4, 2016, hearings was whether defendants failed to comply with the ICO registration requirement, the People in no way conceded the other 14 requirements of the immunity defense had been satisfied. At the August 4 hearing, the prosecutor pointed out, "I don't believe the Court has before it sufficient evidence with regard to all the other requirements of limited immunity . . . to find that it is in the interest of justice to dismiss this case because there are 14 other requirements out there, and we've addressed one. [¶] . . . [¶] . . . It's the defendant's job to prove [the immunity requirements], and there are 14 others."

11

which would motivate a reasonable judge." [Citations.]' [Citation.] 'Courts have recognized that society, represented by the People, has a legitimate interest in "the fair prosecution of crimes properly alleged." [Citation.] ""[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion.' [Citations.]""" (*People v. S.M.* (2017) 9 Cal.App.5th 210, 218.) ""[A] court abuses its discretion if it dismisses a case . . . solely "to accommodate judicial convenience or because of court congestion." [Citation.]"" (*Ibid.*)

Given the trial court's error in finding as a matter of law that defendants were immune from prosecution, the concomitant conclusion that dismissal was in the interest of justice was an abuse of discretion. (See *Property Reserve, Inc. v. Superior Court*, *supra*, 6 Cal.App.5th at p. 1018.)

DISPOSITION

The order of dismissal is reversed.


                                                  _____

                                                  Richardson, J.

We concur:


_____                _____

P. McKay, P. J.                                Ricciardulli, J.