[No. A087932. First Dist., Div. Two. Oct. 31, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
BISMARK ORTEGA, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

COUNSEL

Eleanor M. Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, René A. Chacón and Joan Killeen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**KLINE, P. J.—**

INTRODUCTION

Bismark Ortega appeals from a judgment of the San Mateo County Superior Court following a jury trial. He was convicted of attempted voluntary manslaughter, assault with a firearm, and finding true various related enhancements. He argues that the trial court abused its discretion at sentencing in refusing to dismiss one of the convictions pursuant to Penal Code

section 1385, leaving him with two strikes under the "Three Strikes" law, where the court found that both convictions arose from a single act and stayed sentence on the assault with a firearm conviction pursuant to Penal Code section 654. He also contends: that the use of the phrase "the People" to refer to the prosecution violated his constitutional right to due process and a fair trial and that the reasonable doubt instruction (CALJIC No. 2.90 (1994 rev.)) is unconstitutional. We shall affirm the judgment.

## Combined Statement of the Case and Facts[1]

On November 22, 1997, appellant Bismark Ortega shot Roderick Eugenio five times in front of a Denny's restaurant in South San Francisco. Appellant was convicted following a jury trial of two felony offenses of attempted voluntary manslaughter (Pen. Code, §§ 664/192, subd. (a))[2] and assault with a firearm (Pen. Code, § 245, subd. (a)(2)). On May 4, 1999, the jury found true special allegations as to both counts that appellant personally used a firearm and personally inflicted great bodily injury on the victim. (Pen. Code, §§ 12022.5, subd. (a), 12022.7, subd. (a).) The jury also found that as to the assault count appellant was ineligible for probation, used a deadly weapon, and personally inflicted great bodily injury. (Pen. Code, § 1203, subd. (e)(1), (2) & (3).) An allegation that appellant was on bail during the commission of the offense was tried to the court and found true. (Pen. Code, § 12022.1.)

The court denied appellant's motion to dismiss the conviction for assault with a firearm and sentenced appellant to a total term of 13 years, consisting of a three-year midterm on the attempted voluntary manslaughter and a consecutive 10-year aggravated term on the firearm use allegation. Pursuant to Penal Code section 654,[3] the court stayed the sentence on the assault with a firearm and also stayed the enhancement for the great bodily injury finding on that count. The court also stayed sentencing on the on-bail enhancement pending disposition of the primary offense. The court imposed a restitution fine, which was later reduced from $34,500 to $21,801.42. This timely appeal followed.

## Discussion

### I.

Appellant contends the court abused its discretion in denying his motion to dismiss the assault with a firearm conviction pursuant to section

[1]Additional facts are included as necessary in the discussion.

[2]The jury found appellant not guilty of attempted murder as originally charged, but guilty of the lesser offense of attempted voluntary manslaughter.

[3]All statutory references are to the Penal Code.

1385.[4] He asserts that the assault count was based upon the same facts as the attempted manslaughter and that because both convictions were for the same act, the court should have dismissed the lesser offense in order to avoid leaving him with two prior felony convictions for the purposes of the Three Strikes law. (§ 1170.12; see § 667, subd. (d)(1).) In the alternative, he urges us in the event we affirm his convictions to either strike one of the convictions or to remand to the trial court to allow it to strike one of the convictions.

A. *Background.*

At sentencing, appellant asked the trial court to dismiss his conviction on count 2, assault with a firearm, in the interests of justice, so that he would not have two strikes against him should he reoffend. The trial court denied appellant's motion, stating on the record: "It's clear in my mind that the conduct in this case merges. That is, the conduct for what the defendant was convicted, attempted voluntary manslaughter and assault with a deadly weapon, arise out of the same acts, same conduct, and under [Penal Code section] 654 they clearly merge. [¶] And there's no question in my mind that since they merge, they really aren't different offenses. There was not a separate [Penal Code section] 245 committed on a separate victim in the parking lot on the night in question." The court stated that it would nevertheless deny the motion to dismiss one of the two offenses because of the always present possibility of reversal of the remaining count. Moreover, the court acknowledged that in the event appellant reoffended, he would have relief available under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*). Acknowledging that it couldn't and "wouldn't tell another court what to do with regard to striking the strike," the court nevertheless stated "if . . . I knew that . . . the appellate courts had upheld this court's rulings and the case was not in jeopardy of ever coming back, I would have granted your motion because the conduct is all one."[5] The court also agreed with defense counsel's characterization of the two offenses as a "single act" or "out of a single act."

[4]Section 1385 provides in relevant part: "(a) The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. . . ."

[5]The court explained:

"In the exercise of my discretion, I am going to deny the motion, however, to dismiss one of the two offenses because of the following factors:

"As with any case, there is always the possibility of a reversal on appeal. . . . I would not want to see the victim put through testifying again, the state put through the expense of having to retry the case if, in fact, there was a defect in one of the counts, as opposed to the second count.

". . . I also will state for the record, that quite clearly Mr. Ortega would have *Romero* relie[f] potentially available to him if he ever did pick up another criminal offense. And so he

B. *People v. Benson.*

In *People v. Benson* (1998) 18 Cal.4th 24 [74 Cal.Rptr.2d 294, 954 P.2d 557] (*Benson*), the California Supreme Court held that a conviction that is stayed pursuant to section 654 may nevertheless constitute a strike for purposes of the Three Strikes law. (18 Cal.4th at pp. 26, 29-33.) In *Benson,* the defendant was sentenced under the Three Strikes law on the basis of having had two prior convictions, one for residential burglary and the other for assault with intent to commit murder. Both priors had arisen from a single incident, a knife attack upon the victim in her apartment. Sentence on the assault conviction had been stayed in the earlier case under section 654, prohibiting multiple punishment for offenses committed against a single victim on the same occasion. *Benson* held the trial court properly denied the defendant's request to strike one of the priors. The Supreme Court reasoned that the Legislature had the power to treat, as separate strikes, convictions for which separate punishment would be barred under section 654 (18 Cal.4th at p. 29) and that the language of the Three Strikes law manifested the intent to do so (*id.* at p. 28). The Supreme Court also recognized that pursuant to its decision in *Romero*, "the trial court retains discretion in such cases to strike one or more prior felony convictions under section 1385 if the trial court properly concludes that the interests of justice support such an action." (*Benson*, at p. 36.)

In a footnote, the *Benson* majority observed: "Because the proper exercise of a trial court's discretion under section 1385 necessarily relates to the circumstances of a particular defendant's current and past criminal conduct, we need not and do not determine whether there are some circumstances in which two prior felony convictions are so closely connected—for example, when multiple convictions arise out of a single act by the defendant as distinguished from multiple acts committed in an indivisible course of

can make arguments to a future court that one of the strikes should be stricken, as any defendant would have that right under *Romero.* [¶] And certainly when I did Judge Runde's calendar for a couple weeks, probably half the calendar was people asking for *Romero* relief. So that is always available to Mr. Ortega in the future.

"But for the record, it is quite clear in my mind that this is one act arising out of one sequence of events. And if in fact this motion was made to me at a time when I knew that . . . the appellate courts had upheld this court's rulings and the case was not in jeopardy of ever coming back, I would have granted your motion because the conduct is all one.

"So I think that's a pretty clear record for a future court. Obviously, this court can't and wouldn't tell another court what to do with regard to striking the strike, but that's a pretty clear statement in my mind that this conduct is all one and really can be considered in that manner for future purposes."

Defense counsel then asked: "Just for the record, 'single act' as is mentioned in the footnote in *Benson,* I think they use the word 'out of a single act.' " The court responded: "I would agree with that characterization."

conduct—that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors." (*Benson, supra,* 18 Cal.4th at p. 36, fn. 8.)[6]

Appellant contends that the two felonies here arise from a single act and present precisely the circumstance reserved by *Benson* for a future determination.[7]

C. *Single Act?*

Respondent contends that appellant's conduct giving rise to the two felony convictions may be determined to be other than a single act. Theoretically, it is possible a court might determine appellant's conduct to be more than a single act. In *People v. Trotter* (1992) 7 Cal.App.4th 363 [8 Cal.Rptr.2d 648], the defendant fired three shots at a pursuing officer, all occurring within a minute or two. As described by the court, the defendant, "as he was driving, turned back, pointed, and shot his weapon. He resumed driving, paused for about a minute, turned back, and shot again. After another few seconds a third shot was fired. There was thus time prior to each shot for defendant to reflect and consider his next action." (*Id.* at p. 368.) "[T]his was not a case where only one volitional act gave rise to multiple offenses. Each shot required a separate trigger pull. All three assaults were volitional and calculated, and were separated by periods of time during which reflection was possible. None was spontaneous or uncontrollable." (*Ibid.*) Consequently, the *Trotter* court rejected the single intent and objective analysis for application of section 654 and instead used the reasoning of cases arising in the context of multiple sex offenses committed on a single victim in rapid succession. (7 Cal.App.4th at p. 368; see *People v. Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].)

Similarly, here it may be argued that evidence indicated the victim was shot with a revolver and expert testimony showed each shot at the victim with a revolver required a separate deliberate trigger pull, requiring as much force as the first. Further, the fifth shot entered the victim's back, as he had turned away and was retreating from appellant. Arguably, appellant was more culpable in firing the fifth shot than the first.

However, as charged, as argued by the prosecution, and as found by the trial court, the act underlying the two felony counts was the same one—

[6]The footnote implies that there conceivably may be other circumstances in which the two prior felonies are "so closely connected" that a trial court would abuse its discretion in failing to strike one of the priors. We can think of none other than the single-act example noted by the Supreme Court.

[7]No case of which we are aware has yet held the trial court abuses its discretion by declining to dismiss a current felony conviction for which separate punishment is prohibited under section 654, because of the possibility that should defendant reöffend, he or she will suffer multiple strikes.

shooting the victim. Both counts were enhanced by firearm use and great bodily injury findings. The prosecution argued that appellant committed an assault when he intentionally fired shots at the victim and that he committed attempted murder when at the time he shot at the victim, he intended to kill him. The trial court not only found that section 654 applied to the course of conduct, but expressly agreed that the two felony convictions arose from a single act, and stated that it would have struck one of the convictions if it knew the other would be affirmed on appeal.

In this context, it appears that a single act underlay the two convictions. However, whether appellant might be entitled to have the assault conviction stricken as a prior conviction at some future date by a later court pursuant to *Romero* and section 1385 in the event he reoffends (an issue we do not address), he has failed to show the trial court here abused its discretion in refusing to strike one of the current convictions.

D. *Abuse of discretion?*

"Penal Code section 1385, subdivision (a), authorizes a trial court to dismiss a criminal action 'in furtherance of justice' on its own motion." (*Romero*, *supra*, 13 Cal.4th at p. 504.) "[T]he power to dismiss an action includes the lesser power to strike factual allegations relevant to sentencing, such as the allegation that a defendant has prior felony convictions. [Citations.]" (*Ibid.*) "When a court strikes prior felony conviction allegations in this way, it ' "does not wipe out such prior convictions or prevent them from being considered in connection with later convictions." ' (*People* v. *Burke* [(1956)] 47 Cal.2d [45,] 51 [301 P.2d 241].) Instead, the order striking such allegations simply embodies the court's determination that, ' "in the interest of justice" defendant should not be required to undergo a statutorily increased penalty which would follow from judicial determination of [the alleged] fact.' (*Id.* at p. 50.)" (*Id.* at p. 508.) We review a trial court's ruling under section 1385 for abuse of discretion. (*Romero*, at pp. 530-531; *People v. Memro* (1995) 11 Cal.4th 786, 835-836 [47 Cal.Rptr.2d 219, 905 P.2d 1305]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 314 [87 Cal.Rptr.2d 829].)

The court here understood it had discretion to set aside the conviction under section 1385. It exercised that discretion in refusing to dismiss the conviction. We are convinced the trial court in this instance did not abuse its discretion in refusing to dismiss or set aside the assault conviction, despite its finding both convictions arose from a single act and having stayed sentence under section 654 on the assault conviction.

"[I]t should be stressed that section 654 proscribes double punishment, not double conviction; conduct giving rise to more than one offense within the

meaning of the statute may result in initial conviction of both crimes, only one of which, the more serious offense, may be punished. [Citation.]" (*People v. McFarland* (1962) 58 Cal.2d 748, 762 [26 Cal.Rptr. 473, 376 P.2d 449].) The appropriate procedure is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned, not to set aside both conviction and punishment. (*Id.* at pp. 762-763.)

In his dissent in *Benson,* Justice Chin reviewed the development of the stay procedure in section 654 cases and how that procedure satisfied both legal and practical concerns arising from the fact that double conviction was permissible, but double punishment was not. (*Benson, supra,* 18 Cal.4th at pp. 38-41 (dis. opn. of Chin, J.).) Warning that the majority opinion might result in courts dismissing "excess convictions" (*id.* at p. 44) to avoid multiple strikes, Justice Chin observed that "[d]ismissal, of course, is exactly what should *not* happen. The purpose behind using the stay mechanism to prevent unlawful multiple punishment was to *avoid* dismissal. The stayed convictions should be preserved in the event the conviction for which the punishment was imposed was set aside for any reason. . . . [¶] . . . If the result of today's holding is that courts dismiss entirely convictions governed by section 654 rather than merely staying the punishment, the prosecution may come to regret its victory." (*Ibid.*)[8]

Appellant here would require the trial court to strike his current *conviction* on the stayed assault count to avoid possible future application of that conviction as a strike in the event he should reoffend. The court did not abuse its discretion in refusing to do so. Once the court had stayed execution of the sentence, there was no specter of double punishment before the trial court.

[8]Indeed, in his dissenting opinion, Justice Chin highlighted the dilemma faced by sentencing courts before adoption of the section 654 stay procedure and similar to that articulated by the trial court in this case. "The question the courts faced was how to guarantee a defendant would not receive multiple punishment in violation of section 654 without giving that defendant an undeserved windfall. Generally, the Legislature has permitted multiple *conviction* even when multiple punishment is prohibited. . . . The courts had to decide how to treat multiple convictions that could be punished but once. Setting aside all but one of the convictions would be unwise because, if that conviction were ever vacated for any reason, the others would not be available to replace it. The courts struggled with this question in the decade of the 1960's." (*Benson, supra,* 18 Cal.4th at p. 38 (dis. opn. of Chin, J.), original italics.) The procedure of staying the sentence on the lesser offense was first used in *People v. Niles* (1964) 227 Cal.App.2d 749 [39 Cal.Rptr. 11] and was affirmed as reconciling the various policies involved. " 'Any other method either incurs the risk of letting a defendant escape altogether, or else imposes an unnecessary burden on an appellate court and on the trial court on the inevitable remand for correction of sentence. The procedure here affords appellant the maximum protection to which section 654 entitles him and, *under no condition,* can operate to his prejudice.' (*Ibid.,* italics added.)" (*Benson, supra,* 18 Cal.4th at p. 39.)

The issue of possible double punishment will not arise unless and until appellant reoffends at some point in the future. At such time, a future court must determine whether the prior attempted manslaughter and assault with a firearm conviction constitutes one strike or two and whether one or more strikes should be dismissed in the interest of justice. As recognized by the trial judge below, the issue of *Romero* relief properly may be considered by such future court. That court would consider a variety of factors, including whether the conduct resulting in the stayed sentence here was a single act and whether the Supreme Court's footnote 8 in *Benson* would require that court to strike the use of that conviction as a strike. (*Benson, supra,* 18 Cal.4th at p. 36, fn. 8.)

As recognized recently in *People v. Gaston, supra,* 74 Cal.App.4th 310, the trial court considers many things in determining whether to exercise its discretion pursuant to section 1385, subdivision (a) and "in furtherance of justice" to dismiss an allegation or vacate a finding that a *prior* serious or violent felony conviction qualifies as a strike under the Three Strikes laws: "The abuse of discretion standard 'is deferential. . . . But it is not empty.' (*People* v. *Williams* [(1998)] 17 Cal.4th [148,] 162 [69 Cal.Rptr.2d 917, 948 P.2d 429].) The touchstone for that standard, where a trial court is asked to dismiss a prior serious or violent felony conviction which qualifies as a strike 'in furtherance of justice' pursuant to section 1385, subdivision (a) . . . is whether 'in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant *may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.*' [Citations.] [¶] In deciding a defendant's 'prospects' for committing future crimes, the sentence imposed by the trial court is itself a factor, since the defendant presumably will have fewer opportunities to commit crime while in prison. '[A] defendant's sentence is also a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences.' " (*People v. Gaston, supra,* at p. 315, original italics.)

The *Benson* footnote upon which appellant relies indicates there might be circumstances in which the *later* sentencing court looking at two *prior* felony convictions arising out of a single act would abuse its discretion under section 1385 in failing to strike one of the priors. There is no indication that the Supreme Court might hold that the initial court, considering sentencing on the current convictions, abuses its discretion in failing to strike one of the current convictions. Clearly, the implications of striking a *current* conviction are different from those present in striking a *prior* conviction following reoffense by the defendant.

Appellant would have us hold that a trial court abuses its discretion in failing to strike a current conviction which was properly obtained and as to which sentence has been stayed pursuant to section 654 on the basis of speculation as to what might occur should the defendant reoffend, and on the assumption that a future court might abuse its discretion in failing or refusing to grant *Romero* relief in a proper case. This we will not do. The trial court was legitimately concerned that appellant, in the event of a reversal on the remaining count, might walk free despite having been properly convicted of assault with a firearm.

Moreover, as we have indicated above, should a future court determine to strike this prior conviction "in the interest of justice," the conviction itself will not be wiped out. Appellant will only be prevented from suffering a statutorily increased penalty which would follow from the prior conviction in that case. Later courts may still consider the prior conviction in connection with any subsequent conviction. (See *Romero*, *supra*, 13 Cal.4th at p. 508.) However, should we require this trial court to set aside the conviction on the current offense, that conviction would not be available for consideration by future courts under any circumstances, should appellant reoffend in the future.

These considerations persuade us the trial court did not abuse its discretion in refusing to strike the assault conviction.

Appellant requests that in the event of an affirmance we remand to allow the trial judge to exercise his discretion to strike the conviction. We reject that request because it builds into the appellate process an additional cumbersome step on the assumption that appellant will reoffend at some future date and that a future court looking at the assault conviction as a prior would not consider the issue raised here.[9]

We conclude the trial court did not abuse its discretion in failing to strike the current assault conviction when it stayed sentence on that conviction under section 654.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[9]Nor is it absolutely certain that the appellate process is finished following this affirmance and that the attempted manslaughter conviction will never be overturned. Appellant still has rights to raise these issues in an appeal to the California Supreme Court and to address his constitutional issue in the federal courts.

*See footnote, *ante*, page 659.

DISPOSITION

The judgment is affirmed.

Haerle, J., and Ruvolo, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 14, 2001. Werdegar, J., was of the opinion that the petition should be granted.