Filed 10/9/20  P. v. Linville CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| THE PEOPLE, | C086854 |
| Plaintiff and Respondent, | (Super. Ct. No. SCCRCRF2017721) |
| v. | |
| MARTIN TODD LINVILLE, | |
| Defendant and Appellant. | |

After defendant Martin Todd Linville pleaded no contest to voluntary manslaughter (count 1; Pen. Code, § 192, subd. (a))[1] and assault with a firearm (count 2; § 245, subd. (a)(2)) and admitted personal use of a firearm (§ 12022.5, subd. (a)) as to count 1, the trial court denied his requests for probation and to strike the firearm use allegation.  The court imposed a 10-year state prison sentence (the six-year middle term

---

[1]  Subsequent undesignated statutory references are to the Penal Code.

1

on count 1 plus the four-year middle term for the firearm enhancement, with a three-year concurrent term on count 2).

Defendant contends: (1) The court abused its discretion by denying his request to strike the firearm enhancement on count 1. (2) The court should have stayed imposition of sentence on count 2 under section 654. (3) Defendant is entitled to two additional days of presentence custody credit. The Attorney General concedes the last point. We shall modify the judgment to award the additional days, direct the preparation of an amended abstract of judgment, and affirm as modified.

FACTUAL AND PROCEDURAL BACKGROUND

The charges

The original felony complaint charged defendant with murder (§ 187, subd. (a)). After the preliminary hearing, the complaint was replaced by an information alleging murder as count 1 and assault with a firearm (§ 245, subd. (a)(2)) as count 2, with firearm enhancements on both counts (§ 12022.53, subd. (d), as to count 1; § 12022.5, subd. (a), as to count 2). The amended information to which defendant pleaded no contest substituted voluntary manslaughter for murder as count 1, replacing the section 12022.53 enhancement on count 1 with a less severe enhancement under section 12022.5, and retaining assault with a firearm as count 2.

The preliminary hearing

The evidence at the preliminary hearing, which provided the factual basis for defendant's plea, showed the following:

Around 1:46 a.m. on June 2, 2017, Siskiyou County Sheriff's Deputy Jared Brodjeski was dispatched to a rural residence in Hornbrook, in response to a 911 call placed by defendant. In the call, defendant said he had shot his friend with the friend's gun after the friend had pulled the gun on him; he took the gun from the friend. Defendant also said he was sorry.

The deputy found defendant standing in the driveway with his hands up. Defendant had dried blood on his hands and shin, and emanated a strong odor of alcohol.

After detaining defendant, the deputy saw a male, later identified as David Ralph Casper, lying on his back on the front porch, apparently deceased. Investigators determined that Casper had lived in the residence and defendant had been staying in a trailer on the property.

Casper had a black eye under his left eye, dried blood on his forehead, and bruising on his arms. He also had two bullet wounds: an entry wound in the right knee area and a wound in the right pectoral area.

A .22-caliber revolver loaded with nine shell casings was found on a lawn chair on the porch beside Casper's body. Seven of the shell casings had been fired.

Defendant told the deputies at the scene that the blood on his person was "Ralph's blood." He asked a detective if Casper was dead. The detective said he was, then advised defendant of his rights. Defendant said he did not mean to kill Casper, but Casper had pulled a gun, which defendant got away from him. Defendant also said: "I beat the shit out of him and then I shot him."

Searching the residence, detectives found blood and a clump of Casper's hair on a living room rug, along with signs a struggle had taken place there. A detective concluded that Casper's body had been dragged outside from the living room. He ultimately found evidence bullets were fired inside the residence.

An autopsy found a bullet in Casper's spine and a through-and-through wound in his right knee area, along with significant bruising to his face. The pathologist opined that the gunshot wound to Casper's chest caused his death. At the time of death, Casper's blood-alcohol level was 0.38 percent.

Defendant's plea

Defendant pleaded no contest to count 1 and admitted the firearm enhancement thereon pursuant to *People v. West* (1970) 3 Cal.3d 595. The plea agreement provided

that the sentencing "lid" was 10 years, sentence on count 2 would either be stayed under section 654 or run concurrent to count 1, the firearm enhancement on count 2 would be dismissed, and defendant could argue for probation and for striking the firearm enhancement on count 1 at sentencing.

The probation report

The probation report recommended imposing the maximum sentence under the plea agreement.

The report noted defendant was presumptively ineligible for probation and found no factors under rule 4.413 of the California Rules of Court[2] sufficient to overcome the presumption. The offense was "not substantially less serious than the circumstances typically present in other cases," defendant had prior convictions "for violence," the current offense was more serious than his prior offenses, the offense was not the result of great provocation or coercion, he did not commit the offense because of a mental health condition that could be treated as a condition of probation, and he was neither youthful nor aged.[3]

The report found in aggravation (rule 4.421) that defendant had engaged in violent conduct which indicates a serious danger to society, defendant's prior convictions were numerous or of increasing significance, and defendant's prior performance on probation or parole was unsatisfactory. The report found no factors in mitigation (rule 4.423). However, the middle term was recommended pursuant to the plea agreement.

---

[2] Undesignated references to "rules" are to the California Rules of Court.

[3] His prior record included five misdemeanors: a 1989 DUI, a 2006 conviction for disturbing the peace by fighting or challenging another to fight in a public place, a 2006 conviction for violating a protective order, a 2008 conviction for obscene or threatening phone calls, and a 2008 conviction for grossly negligent discharge of a BB gun and assault with a deadly weapon.

Defendant had a ninth-grade education. He stated that he had worked for many years as a drywaller, but was now medically disabled and had applied for Supplemental Security Income; he had not been regularly employed since 2006.

Defendant reported that his parents' marriage had dissolved and his father had become an alcoholic. His own history of alcohol abuse began in early childhood and continued, with one two-year period of sobriety, until the present; he admitted being "very intoxicated" at the time of the offense.

Defendant stated he had lived in a trailer at the victim's property for less than two weeks before the offense. Prior to that, he had been homeless since 2016, when a family home burned. He hoped to reside with his sister in Sonoma County if granted probation.

In the probation officer's view, defendant showed little remorse, unconvincingly claiming self-defense despite being in a "blackout" state of intoxication. After getting the upper hand in the struggle with the victim, defendant chose to shoot the victim twice. Defendant also justified his prior offenses, including one in which he shot at citizens with a BB gun.

Defendant attached a written statement, claiming that in the last 10 years he had gone through personal tragedy: his brother had been shot to death in 2007, his mother and stepfather had died in 2015 and 2016, and then the family home burned to the ground, killing defendant's dogs and cat. He had come to Siskiyou County for medical reasons, and the victim had offered to let him stay in the victim's trailer. He gained the victim's trust and became "drinking buddies" with him. On the night of the offense, he and the victim were drinking and playing penny-ante poker; after a while, defendant "started to fade out" and reached the blackout stage of intoxication. Then an explosion next to his ear awoke him. The victim had fired a gun, and was yelling at him while cocking the trigger and raising the gun to point it at defendant's face. In fear for his life, defendant started punching the victim and gained control over the gun. Somehow defendant found himself on top of the unconscious victim. Not knowing whether the

victim was knocked out or shot, defendant dragged him outside. From then on, "everything happened so fast in a dream like way." As soon as he realized the victim had been shot, defendant called 911, asking for help. He had never meant to kill the victim. Defendant felt he was "kind of the victim here," though he recognized he had put himself in the wrong place at the wrong time. He hoped to get probation and have it transferred to Sonoma County so that he could live with his sister there, away from his old habits and associations.

Defendant's request to strike the firearm enhancement

Defendant filed a request that the trial court "strike or stay" the firearm use enhancement under section 1385. Relying on his statement to the probation officer, he asserted his "background reflects a life story full of difficulty and tragedy." Despite this history, he had no significant criminal record; all his convictions were misdemeanors, and the latest was 10 years ago. The probation department's risk assessment screening tool had determined he was a low risk to reoffend. He was cooperative with law enforcement after they responded to his 911 call.[4] He first expressed remorse during that call "and continues to do so to this day." He had entered a *West* plea "to spare his and Mr. Casper's family the pain of a jury trial." He had proven his "desire to take all necessary steps to address his alcoholism and mental health issues." He also had strong support from family and community members, as shown by the letters attached to this pleading.

Finally, according to defendant, "it is difficult to imagine facts more mitigating than those presented by this case." The facts were most closely analogous to those in *People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822 (*Du*), where the appellate court upheld the trial court's grant of probation after the defendant was convicted of voluntary manslaughter and use of a firearm. The defendant, a liquor store owner, believed the

---

[4] A transcript of the 911 call was attached.

victim was shoplifting and tried to detain her; after the victim hit the defendant and knocked her down, the owner, fearing for her life, got a gun (which she had never used before) from behind the cash register and shot the victim, not intending to kill her. (*Id*. at pp. 826-827.) The appellate court found the interests of justice warranted probation because the defendant possessed the gun lawfully for her own protection, had no record of committing crimes of violence, and acted under circumstances of great provocation, coercion, and duress. (*Id.* at p. 832.)

As in *Du*, defendant did not arm himself with a gun to commit crimes. The gun he used was not his but was taken from the intoxicated victim after the victim had used it to assault and threaten him. Defendant knew the victim had used that gun that way before. The gun went off during defendant's struggle with the victim. Afterward, defendant "desperately tried to get medical help for Mr. Casper." These facts, in addition to defendant's history, constituted mitigating circumstances that warranted striking the firearm use enhancement in the interests of justice.

Defendant's sentencing memorandum and statement in mitigation

Defendant requested probation or the low term on count 1 with a stay of the firearm enhancement.

Defendant asserted first that probation was appropriate. As in *Du, supra*, 5 Cal.App.4th 822, this case showed "unusual circumstances" to overcome the presumption of ineligibility (rule 4.413). The facts relating to the crime (rule 4.414(a)) indicated that the offense was less serious than others of its class due to the victim's drunken assault on defendant, and it was committed under an unusual circumstance or great provocation unlikely to recur. The facts relating to defendant (rule 4.414(b)) indicated that his criminal record consisted only of misdemeanors, none recent; he was willing to comply with probation and to seek out resources to help him with his alcohol and mental health problems; he was 50 years old and faced both physical and mental

challenges, which prison would make worse; he had consistently expressed remorse; and he was unlikely to be a danger to others if not imprisoned.

In the alternative, defendant requested the low term with the striking or staying of the firearm enhancement. The aggravating factors found by the probation officer did not apply: nothing about defendant suggested he would be a danger to society in the future; his prior criminal record was insignificant; and he was not presently under probation or parole supervision. (Defendant conceded that his last probation had terminated unsuccessfully due to failure to pay ordered fines and fees.) There were mitigating factors related to the crime (rule 4.423): the victim was an initiator, aggressor, or provoker of the incident; the crime was committed under unusual circumstances not likely to recur; and defendant's mental and emotional issues, which gave rise to his drinking, constituted a partial excuse not amounting to a defense. There were also mitigating factors related to defendant, namely his insignificant prior record, his voluntary intoxication coupled with post-traumatic stress disorder (PTSD) from seeing a family member killed by gunfire, and his voluntary acknowledgment of wrongdoing at an early stage.[5]

In addition to supporting letters and other documentation, defendant's sentencing memorandum attached an "evaluation of criteria affecting probation [and] factors in aggravation and mitigation" prepared by the former supervising probation officer of Siskiyou County's Probation Department, which took issue with the probation report's assessment and endorsed that of defendant.

---

[5] As documentation for the claim of PTSD, the statement attached a photograph of a drug prescribed to defendant.

8

<u>The People's sentencing memorandum and response to defendant's request to stay the firearm enhancement</u>

The People opposed defendant's request to strike or stay the enhancement and supported the sentence recommended by probation.  The People noted that the plea agreement had given defendant a highly favorable bargain:  instead of a potential maximum sentence of 40 years to life, he now had a 10-year lid.  Section 1385 did not justify improving on that bargain.  The enhancement defendant admitted did not require that the firearm be working, loaded, or fired at the victim; in this case, all three of those facts were present, and defendant's use of the firearm had resulted in the victim's death.

The People also asserted that their accepted plea offer, which included concurrent sentencing on count 2, was advantageous to defendant because that count related to the shot to the victim's leg, which was not subject to section 654 and could have been sentenced consecutively.

<u>The sentencing hearing</u>

After a sentencing hearing that extended over two court days, during which counsel argued their positions at length, the trial court imposed the maximum sentence allowed under the plea agreement.

DISCUSSION

I

Defendant contends the trial court abused its discretion under sections 1385 and 12022.5, subdivision (c), by denying his request to strike the firearm enhancement.  According to defendant, his actions in using the firearm "fell outside the spirit of section 12022.5 which typically involves individuals who arm themselves and then commit crimes."  We disagree.  The court's ruling was well within its discretion, and defendant does not cite any apposite authority showing that there is a "spirit of section 12022.5" which his acts fell outside.

9

When a trial court exercises its discretion in responding to a request to strike an enhancement "in the furtherance of justice," we review for abuse of discretion. (§ 1385, subd. (b); *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977 (*Alvarez*); *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 531; *People v. Ortega* (2000) 84 Cal.App.4th 659, 666.) The party attacking the sentence must " 'clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*Alvarez*, at pp. 977-978, quoting *Du, supra*, 5 Cal.App.4th at p. 831.) We will not reverse simply because reasonable people might disagree with the court's decision. (*Alvarez*, at p. 978.)

Defendant fails to show that it was arbitrary or irrational for the trial court to impose the firearm enhancement in accordance with his plea agreement, which is presumed to embody legitimate sentencing objectives. So far as defendant recites the facts in the light most favorable to himself, this is insufficient to show the trial court abused its discretion by construing them otherwise. (*Alvarez, supra*, 14 Cal.4th at p. 978.) His attempt to draw analogies to decisions in which defendants were found to be outside the spirit of the three strikes law (cf. *People v. Garcia* (1999) 20 Cal.4th 490; *People v. Williams* (1998) 17 Cal.4th 148, 161) is misguided because he cites no authority holding that a court's decision under section 12022.5 must broadly consider the whole range of subjects applicable to a three strikes sentencing decision: " '[F]actors intrinsic to the [Three Strikes] scheme, such as the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects.' " (*Garcia*, at pp. 498-499, quoting *Williams*, at p. 161.) In other words, defendant's expression "outside the spirit of section 12022.5" has no foundation in the express terms of the statute or in any apposite authority.

10

In *Du, supra*, 5 Cal.App.4th 822, on which defendant relies, the issue was whether the trial court abused its discretion by granting probation where the defendant, a middle-aged female shopkeeper who killed the much younger and larger victim after confronting her over suspected shoplifting and being knocked down by her (*id*. at pp. 826-827), was convicted of voluntary manslaughter with the personal use of a firearm. As one reason why this was an "unusual case" that overcame the statutory presumption of ineligibility for probation, the trial court observed, and the appellate court agreed, that the defendant lawfully possessed the firearm for her own protection—unlike "criminals who arm themselves and go out and commit crimes," at whom "[t]he statute . . . is aimed." (*Id.* at pp. 832-833.) *Du* is procedurally and factually inapposite.

First, defendant does not challenge the trial court's finding that this was not an unusual case for purposes of granting probation. Second, neither the trial court nor the appellate court in *Du* had any occasion to consider whether it would "fall outside the spirit of section 12022.5" (a phrase not used by the trial court or the appellate court) to act as defendant did here: to seize a victim's gun, then "beat the shit out of him," *then* shoot him. That sequence of events distinguishes this case from *Du*, where the defendant acted in an honest but unreasonable belief in the need for self-defense. (*Du, supra*, 5 Cal.App.4th at pp. 827-828.)

Defendant has shown no abuse of discretion in the trial court's denial of his request to strike the firearm enhancement.

## II

Defendant contends the trial court erred by failing to stay the concurrent term on count 2 under section 654. We disagree.

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of*

11

*California* (1960) 55 Cal.2d 11, 19, disapproved on another point in *People v. Correa* (2012) 54 Cal.4th 331, 334.)  The trial court's determination as to whether the defendant had more than one intent and objective is a question of fact, and we review the court's ruling for substantial evidence.  (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1252-1253; *People v. Green* (1996) 50 Cal.App.4th 1076, 1084-1085.)

As the People stated, count 2 (assault with a deadly weapon) charged defendant's act of shooting the victim in the knee, whereas count 1 charged his act of firing the fatal shot into the victim's chest.  Since a shot to the knee is normally not intended to be lethal, but a shot to the chest is often so intended, substantial evidence supports the trial court's implied determination that defendant had different intents and objectives in firing the two shots.  Thus, the court correctly found that section 654 did not apply to count 2.  *People v. Corpening* (2016) 2 Cal.5th 307, on which defendant relies, is inapposite because the defendant's course of conduct, though consisting of discrete physical acts describable as robbery and carjacking, had the single intent and objective of robbery.  (*Id*. at pp. 311, 315.)

So far as defendant claims his single intent and objective was "to get the gun away from the victim in order to stop him from shooting [defendant]," the claim fails.  First, that intent and objective would not be punishable at all, since it describes reasonable self-defense.  Second, assuming defendant had that intent and objective, it was satisfied before he fired any shots whatever.  Thus, it does not describe his conduct as to either charged count.

### III

Defendant contends he is entitled to additional presentence custody credits.  The Attorney General agrees.  We agree with the parties.

Defendant was awarded 336 days of total credit at sentencing.  He was taken into custody on June 2, 2017.  His sentencing hearing took place on March 22, 2018.  Thus, he spent 294 days in custody prior to sentencing.  However, the trial court found only 293

days of actual custody, including 43 days of conduct credits pursuant to section 2933.1. The correct order is 294 actual days of credit and 44 days of conduct credit, for a total of 338 days.

We modify the judgment to add the additional two days of credit and direct the trial court to prepare an amended abstract of judgment showing the correct number of days of presentence custody credit and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

## DISPOSITION

The judgment is modified to reflect 294 actual days of credit and 44 days of conduct credit, for a total of 338 days. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is affirmed as modified.


_____/s/_____
RAYE, P. J.



We concur:



_____/s/_____
BLEASE, J.



_____/s/_____
MAURO, J.



13