Filed 12/1/20  P. v. Speer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C089289 |
| Plaintiff and Respondent, | (Super. Ct. No. 17CF00867) |
| v. | |
| ROBERT ALLEN SPEER, | |
| Defendant and Appellant. | |

Following a court trial, defendant Robert Allen Speer was found guilty of first degree residential burglary.  The court further found defendant had been convicted of two strike offenses that also qualified for prior serious felony conviction enhancements. While the court exercised its discretion to strike one of defendant's strike enhancements, it declined to strike the other and the two prior serious felony conviction enhancements. As a result, defendant was sentenced to 22 years in prison. After "considering [defendant]'s length of term in the state prison and future prospects on ability to pay," the court imposed various fines and fees.

1

On appeal, defendant contends there was insufficient evidence to support his conviction for first degree residential burglary because the evidence does not establish he entered the residence. He further contends the court erred during sentencing by declining to strike more than a single strike enhancement and by imposing fines and fees without first holding an ability-to-pay hearing. Finally, defendant argues his counsel was ineffective for failing to request a hearing under Penal Code[1] section 1001.36. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Burglary*

On February 24, 2017, Oroville Police Officer Marcus Tennigkeit responded to a call for service regarding two suspicious people in front of a home that had been evacuated during the Oroville spillway crisis. When he arrived, Officer Tennigkeit "didn't observe anybody in the front of the residence" but "a gate to the right or west of the residence was open." As Officer Tennigkeit walked toward the gate, he heard movement from inside the garage. Officer Tennigkeit then called and waited close to five minutes for a backup officer to arrive. During that time, Officer Tennigkeit did not see anybody go in or come out of the home; however, he could not see the back of the house. He further did not hear anybody attempt to leave the backyard, which was surrounded by shrubs and a fence.

When Oroville Police Sergeant Stephen Solano arrived, the two officers walked to the backyard of the home and saw an open door, which led to the home's attached garage. Sergeant Solano searched the home for potential intruders with a K-9 officer, and Officer Tennigkeit searched the backyard. During his search, Officer Tennigkeit found

---

[1]     Further section references are to the Penal Code unless otherwise indicated.

2

defendant crouching behind a large tree. Officer Tennigkeit ordered defendant out at gunpoint and arrested him.

After putting defendant in a police car, two officers, along with the K-9 officer, again searched the home for potential intruders. In Officer Tennigkeit's opinion, if anybody was hiding in the home, the K-9 officer "[m]ost likely" would have found him or her. No person was found inside of the home and every door, other than those in the garage, was secure. Further, footprints on the wet grass in the backyard led to defendant's hiding spot and not to neighboring yards.

The door leading from the garage to the main house had its glass removed and its screen damaged. Further, there were pry marks on the door jamb and door knob. The home had been "ransacked." "Drawers were dumped out, a few items were tipped over, things were gone through not in an orderly fashion. Just things thrown about the residence." Upon a search of defendant's backpack, Officer Tennigkeit discovered a small "pry bar." Also in the backpack and on defendant's person were items from inside the home. Missing from the home, and never recovered, were a brand new television and lawn mower. Officer Tennigkeit also found methamphetamine on defendant.[2]

---

[2] Defendant testified he was essentially homeless and, that the day before the incident, his backpack had been stolen with all of his and his girlfriend's belongings in it. The day of the incident, defendant saw someone he thought was associated with the theft of his backpack and confronted that person. The person told defendant he would take defendant to the backpack, which led defendant to the backyard of the house where defendant was eventually arrested. Defendant testified that the person eventually fled the backyard, leaving defendant's backpack behind with all of his belongings "strewn all the way around it." It was dark and defendant put everything on the ground into his pockets without looking at what he was collecting. Defendant worked quickly because he heard movement from inside the house. When he heard someone come into the backyard, defendant hid where he was eventually discovered and arrested.

3

## II

### *Court Proceedings*

Before trial, defense counsel declared a doubt as to defendant's competence. An expert evaluated defendant's mental competence and filed a report with the trial court. Following a competency hearing, the trial court found defendant competent to stand trial.

After a court trial, the court found defendant guilty of first degree residential burglary and found true two prior strike allegations and two prior serious felony conviction allegations. When finding defendant guilty, the court said "that [it] was not persuaded by [defendant]'s testimony and was persuaded by that of the officer and the other witnesses. The Court is mindful that in finding [defendant] guilty of the burglary, that does not impute to him all of the theft from the house that night. Rather the evidence shows, in the Court's mind, in that it was found on and around [defendant] and they were items particularly identified as having been inside of the home that [defendant] did enter the home with the intent to steal and did steal items contained therein regardless of whether others also burglarized the home."

The court later exercised its discretion to strike one of defendant's prior strike allegations -- a 1983 juvenile adjudication for voluntary manslaughter -- but declined to strike the remaining prior strike allegation and prior serious felony conviction allegations. Before ruling, the court reviewed the probation report. The probation report indicated defendant "was diagnosed with unknown mental health conditions when he was at the California Youth Authority. He has been in counselling off and on throughout his life, and he indicated his diagnoses have changed on numerous occasions." The probation report further indicated defendant abused alcohol and methamphetamine from an early age. Starting from the ages of 10 and 11, respectively, defendant used as much methamphetamine and alcohol as he "could get [his] hands on." He was a poor historian regarding his periods of sobriety, but defendant indicated his consumption of methamphetamine and alcohol had increased in 2016 after his mother was diagnosed with

4

lung cancer.  Defendant also indicated he had abused Oxycontin for a short time after being prescribed the drug following an injury.  Defendant admitted to the probation officer he ingested methamphetamine on the day of the burglary.  While defendant acknowledged to the probation officer his mental health was evaluated as part of a competency hearing, he "denied suffering any deterioration of his mental health, explaining, 'I just didn't agree with my attorney.' "  Defendant further attributed his current offenses and past parole and probation violations to his substance abuse.

When deciding whether to strike defendant's sentencing allegations, the court stated the standard it was to apply when determining whether to strike allegations in the interest of justice and then entered an analysis of the issue.  It first considered the nature and circumstances of defendant's present convictions and found defendant targeted a vulnerable victim, who was evacuated from the home, and took only personal items of no apparent market value.

The court also considered defendant's felony criminal record, which began in 1983 when he sustained his first strike conviction -- a juvenile adjudication for voluntary manslaughter with the use of a firearm.  Defendant was housed with the California Youth Authority and eventually released from parole with no violations.  Defendant, however, reoffended in 1990 when he was convicted of possession of stolen property.  Defendant remained crime free until 1995 when he was convicted of battery.  In 1996, he was again convicted of possession of stolen property, as well as failure to appear and another property offense.  Defendant was convicted of his second strike offense in 1998 for oral copulation with a minor under 14 years of age.  Defendant was released from prison in 2004, but violated parole in 2006 and 2007.  Then in 2009, defendant was convicted of a Health and Safety Code violation that would be a misdemeanor but for defendant's registration obligation under section 290.  Defendant was also convicted of several misdemeanors throughout this time as well.

5

The court then considered defendant's character and prospects. It noted defendant had remained free from crime for appreciable periods of time in his life. The court also noted that if it struck a prior strike allegation, defendant would serve a determinate term of 22 years in prison, which at his current age of 52, would result in him being released at an age when he is less likely to reoffend.

Finally, the court considered whether the determinate sentence of 22 years was disproportionate to defendant's conduct. The court thought it was not disproportionate because, although defendant was under the influence of drugs at the time he committed the burglary, the sentence was necessary to deter his recidivist behavior in light of defendant's refusal to acknowledge responsibility in his current case.

The court sentenced defendant to 22 years in prison -- six years for the first degree burglary conviction, doubled pursuant to the three strikes law, and 10 years for the two prior serious felony conviction allegations. The court then imposed fines and fees after "considering [defendant]'s length of term in the state prison and future prospects on ability to pay."

Defendant appeals.

## DISCUSSION

### I

*Sufficient Evidence Supports Defendant's First*

*Degree Residential Burglary Conviction*

Defendant argues there was insufficient evidence to support his conviction for first degree residential burglary. We disagree.

"In assessing a claim of insufficiency of the evidence, the reviewing court's task is to 'review the whole record in the light most favorable to the judgment . . . to determine whether it discloses substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Ringo* (2005) 134 Cal.App.4th 870, 880.)

6

" 'The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] "Although it is the duty of the [trier of fact] to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [trier of fact], not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt." ' " (*People v. Snow* (2003) 30 Cal.4th 43, 66.)

To establish the crime of burglary, the prosecution must prove an unlawful entry into a residence with the intent to commit a larceny or any felony. (§§ 459, 460, subd. (a); *People v. Allen* (1999) 21 Cal.4th 846, 863, fn. 18.) The crime is complete upon entry into the defined structure with the larcenous intent, regardless of whether any theft takes place. (*Allen*, at p. 863, fn. 18; *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540 ["One may be liable for burglary upon entry with the requisite intent, regardless of whether the felony or theft actually committed is different from that originally contemplated, or whether any felony or theft actually is committed"].) The intent required to commit a burglary must be present at the time of entry. (*People v. Sparks* (2002) 28 Cal.4th 71, 85, fn. 17.)

For an entry to occur, the defendant must penetrate the building's outer boundary. (*Magness v. Superior Court* (2012) 54 Cal.4th 270, 273.) "[P]ossession of recently stolen property by itself is not sufficient to support a finding of guilt of *any* offense -- including theft-related offenses -- and, accordingly, there must be other corroborating evidence of the defendant's guilt." (*People v. Moore* (2011) 51 Cal.4th 1104, 1130.) However, "[w]hen . . . a defendant is found in possession of property stolen in a burglary shortly after the burglary occurred, the corroborating evidence of the defendant's acts, conduct, or declarations tending to show his guilt need only be slight to sustain the burglary convictions." (*People v. Mendoza* (2000) 24 Cal.4th 130, 176, superseded by statute on other grounds as stated in *People v. Brooks* (2017) 3 Cal.5th 1, 63, fn. 8.) As corroborating evidence, the trier of fact may consider the time, place, and manner of the

7

defendant's possession of stolen property, the defendant's conduct, and any other evidence that tends to connect the defendant with the crime. (*People v. Parson* (2008) 44 Cal.4th 332, 355.)

Defendant acknowledges and minimizes corroborating evidence of his entry, such as his possession of items from the home and a pry bar similar to that used to enter the home. He also acknowledges and minimizes his proximity to the home and flight from police. Defendant argues this was all insufficient to convict him because the evidence established somebody else had taken items from the home and no testimony established the pry marks on the door matched the pry bar found in defendant's possession.

Defendant's argument amounts to an argument we should believe his theory -- that someone else burglarized the home and left items in the backyard defendant collected while retrieving his backpack -- over the theory presented by the prosecution -- that defendant used the pry bar to enter the home and take the items later found in his possession. This issue of credibility was left to the trier of fact (*People v. Zamudio* (2008) 43 Cal.4th 327, 357), who rejected defendant's testimony. Indeed, the court stated that while someone else may have taken more expensive items from the home, defendant's possession of inexpensive and personal items from the home convinced it defendant came into possession of those items after entering the home and that the items were not left behind by the previous intruder. Considering defendant's possession of a pry bar, proximity to the home, and flight from police, sufficient evidence supports the burglary conviction. (See *People v. Parson*, *supra*, 44 Cal.4th at p. 355.)

II

*The Trial Court Did Not Abuse Its Discretion By Declining To Strike One Of Defendant's Prior Strike Allegations And His Two Prior Serious Felony Conviction Allegations*

Defendant argues the trial court abused its discretion by striking only one of his prior strike allegations because "a sentence of 22 years in state prison for the instant

offense, in light of [defendant's] personal circumstances, the nature of the offense, and the nature of his criminal record is patently absurd and unjust." We disagree.

When a trial court exercises its discretion in responding to a request to strike an enhancement "in furtherance of justice," we review for abuse of discretion. (§ 1385; *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 531; *People v. Ortega* (2000) 84 Cal.App.4th 659, 666.) The party attacking the sentence must " 'clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*Alvarez*, at pp. 977-978.) We will not reverse simply because reasonable people might disagree with the court's decision. (*Id.* at p. 978.)

Defendant argues the court ruled contrary to the spirit of Proposition 36[3] because it imposed punishment that was disproportionate to his crime, resulting in a long sentence and waste of taxpayer dollars. Defendant points to the trial court's statement when imposing the upper term for defendant's burglary conviction that it found no mitigating factors to prove the court did not adequately consider all the circumstances relevant to determination of the proper sentence. But defendant is not challenging the court's imposition of the upper term. Instead, he is challenging the court's refusal to strike a prior strike allegation and two prior serious felony conviction allegations. When the court ruled on that motion, it considered the circumstances of defendant's crime as well as factors related to his background, character, and prospects, as it was required to do. (See *People v. Williams* (1981) 30 Cal.3d 470, 489 [courts must consider all the facts of the offense and all the circumstances related to defendant when exercising discretion

---

**3**    See *People v. Estrada* (2017) 3 Cal.5th 661, 666.

9

under § 1385]; see also *People v. Shaw* (2020) 56 Cal.App.5th 582, 585-587 [courts apply the same standard when exercising discretion under §1385 to strike a prior serious felony conviction enhancement].)

The court further analyzed whether the 22-year sentence imposed was disproportionate to defendant's conduct as defendant argues on appeal it was required to do under Proposition 36. The court concluded the sentence was not disproportionate because the sentence was necessary to deter defendant's recidivist behavior in light of defendant's refusal to take responsibility for committing the burglary. No error occurs if the trial court evaluates all relevant circumstances to ensure that the punishment fits the offense and the offender. (*People v. Shaw*, *supra*, 56 Cal.App.5th at p. 587.)

Still, defendant argues the court failed to consider defendant's mental health or appreciate the length of time since he committed his qualifying offenses and remained free from incarceration. Evidence of defendant's mental health, however, was limited to him receiving an unknown diagnosis as a juvenile and counseling off and on throughout life, which led to other unknown diagnoses. While defendant's mental health was evaluated in connection with his criminal proceeding, nothing from that evaluation was presented to the court to consider before exercising its discretion to strike defendant's sentencing allegations. Instead, defendant explained to the probation officer that the need for an evaluation was a misunderstanding. Indeed, defendant did not provide evidence of his current mental health status but instead attributed his current criminality to heavy alcohol and methamphetamine use. The court acknowledged the mitigating effect of addiction and weighed this circumstance in favor of defendant to justify striking one of his strike allegations. Moreover, given defendant's prolonged addiction and purported mental health challenges, the issues appear intertwined and considered by the trial court.

To the extent defendant argues the court did not assign the proper weight to any circumstance surrounding defendant's offense and personal history, that argument must fail. As long as the trial court weighed all the relevant circumstances, we cannot reverse

10

simply because we disagree with the trial court's ultimate ruling. (*People v. Superior Court (Alvarez)*, *supra*, 14 Cal.4th at p. 978.) Here, the court entered a detailed analysis of defendant's current offense, criminal history, character and prospects, and whether the proposed sentence was disproportionate to defendant's conduct. Accordingly, the trial court did not abuse its discretion.

III

*The Trial Court Determined Defendant's Ability*

*To Pay Before Imposing Fines And Fees*

Defendant contends the trial court erred by failing to hold an ability-to-pay hearing before imposing fines and fees. He acknowledges he was sentenced after *Dueñas* held that principles of due process would preclude a trial court from imposing the fine and assessments at issue without first determining a defendant's ability to pay. (*People v. Dueñas* (2019) 30 Cal.App.5th 1157.) Defendant, however, fails to acknowledge the trial court here made a finding, based on the length of defendant's incarceration and his future prospects, that defendant had the ability to pay the fines and fees imposed. Thus, the trial court complied with the holding of *Dueñas* that it determine defendant's ability to pay before imposing fines and fees.

To the extent defendant wanted the trial court to hold a hearing before determining his ability to pay, defendant was required to object and request a hearing. (See *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 [a trial court is required to determine a defendant's ability to pay only if the defendant raises the issue, and the defendant bears the burden of proving an inability to pay].) Defendant's failure to do so has resulted in forfeiture of his appellate claim. (Cf. *People v. Speight* (2014) 227 Cal.App.4th 1229, 1248-1249 [ruling counsel should have raised an argument during a sentencing hearing that occurred five weeks after a California Supreme Court decision announced the relevant principle].)

11

IV

*Counsel Was Not Ineffective*

Defendant contends his counsel was ineffective for failing to request a hearing on whether he qualified for pretrial mental health diversion under section 1001.36 during his criminal proceedings.[4] We disagree.

"When challenging [counsel's actions] on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an *appellate* claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

Section 1001.36 provides pretrial diversion may be granted if the trial court finds all of the following criteria are met: (1) the defendant suffers from a recently diagnosed

---

**4** Defendant spends much time arguing the enactment of section 1001.36 is retroactive to him. But defendant was tried and sentenced after the effective date of section 1001.36, thus there is no dispute that the enactment of pretrial mental health diversion was available to him. (Stats. 2018, ch. 34, § 24, eff. June 27, 2018)

mental disorder enumerated in the statute; (2) the disorder was a significant factor in the commission of the charged offense, and that offense is not one of the offenses enumerated in subdivision (b); (3) "[i]n the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment"; (4) the defendant consents to diversion and waives his right to a speedy trial; (5) the defendant agrees to comply with treatment as a condition of diversion; and (6) the defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community. (§ 1001.36, subd. (b)(1)-(2).) If the treatment under pretrial diversion is deemed successful, the charges shall be dismissed and the defendant's criminal record expunged. (§ 1001.36, subds. (b)(1)(A)-(C), (c)(3), (e).)

The statute further provides: "At any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion and that the defendant and the offense are suitable for diversion. The hearing on the prima facie showing shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel. If a prima facie showing is not made, the court may summarily deny the request for diversion or grant any other relief as may be deemed appropriate." (§ 1001.36, subd. (b)(3).)

Defendant points to his mental competency evaluation, which indicated he suffered from multiple mental health disorders, as well as counsel's and the court's comments connecting defendant's drug use to the commission of the crime as evidence counsel should have requested a hearing. Even so, defendant cannot demonstrate that counsel's failure to request an eligibility hearing fell below an objective standard of reasonableness.

Defendant's mental competency evaluation included an opinion of the authoring expert that "[b]ased on [defendant's] history of multiple suicide attempts, antisocial and paranoid personality traits, history of multiple convictions for criminal offenses, the

13

prospect of a lengthy prison sentence, and his current level of anger, . . . [defendant] **Poses Moderately High Risk of Harm to Self and Danger to Others.**" Further, the court observed when declining to strike several of defendant's sentencing allegations that a lengthy sentence was necessary to deter defendant's recidivist behavior and protect the public. While there was no finding defendant posed an unreasonable risk of committing a violent felony, which would disqualify defendant from pretrial diversion (§ 1001.36, subd. (b)(1)(F)), the findings that were made support an inference that counsel's personal interactions with defendant led counsel to believe defendant was disqualified from pretrial mental health diversion due to his danger to public safety. Accordingly, counsel was not ineffective.

## DISPOSITION

The judgment is affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Murray, J.

/s/
Hoch, J.

14